Beverly Michelle Moore 518614
SSN:
Mabel Bassett Correctional Center
29501 Kickapoo Road
McLoud, Oklahoma 74851



**FILED**

SEP 0 4 2009

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Beverly Michelle Moore, Petitioner

**CIV-09-985 C**

Case No.

v.

Warden Millicent Newton-Embry, Respondent

**PETITION FOR A WRIT OF HABEAS CORPUS** PURSUANT TO 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY



### CONVICTION UNDER ATTACK

1) Name and location of the court which entered the judgment of conviction under attack:

   Oklahoma County District Court, State of Oklahoma.

2) Date judgment of conviction was entered: October 11, 2005.

3) Case number: CF-04-351.

4) Length and terms of sentence: Life without Parole modified to Life with the Possibility of Parole on Direct Appeal to Oklahoma Court of Criminal Appeals.

5) Are you presently serving a sentence imposed for a conviction other than the conviction under attack in this motion? No

1

6) Nature of the offense involved (all counts): First-Degree Murder

7) What was your plea? Not Guilty

8) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement: N/A

9) Kind of trial: Jury Trial

10) Did you testify at trial (if any)? Yes

**Direct Appeal**

11) Did you appeal from the judgment of conviction? Yes

12) If you did appeal, state the name and location of the court where the appeal was filed, the result, the case number and the date of the court's decision. See attached copy of the court's opinion and order.

13) If you did not appeal, explain briefly why you did not: N/A

14) Other than a Direct Appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any court, state or federal? Yes

15) If your answer to 14 was "Yes", give the following information:

   a) **First petition, application or motion.**

      1) Name of court: Oklahoma County District Court

      2) Nature of proceeding: Application for Post-Conviction Relief

      3) Grounds raised: Ineffective counsel

      4) Did you receive an evidentiary hearing on your petition, application or motion? No

      5) Result N/A

      6) Date of result N/A

2

7) Did you appeal the result to the highest state court having jurisdiction? N/A

8) If you did not appeal, briefly explain why you did not: already filed direct appeal to OCCA.

b) **As to any second petition, application or motion.**

1) Name of court: Oklahoma Court of Criminal Appeals

2) Nature of proceeding: Petition in Error

3) Grounds raised: Ineffective counsel

4) Did you receive an evidentiary hearing on your petition, application or motion? No

5) Result: Dismissed

6) Date of result: March 9, 2009

7) Did you appeal the result to the highest state court having jurisdiction? No. If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order).

8) If you did not appeal, briefly explain why you did not: Already filed direct appeal and petition in error to OCCA.

16) State concisely every ground on which you claim that you are being unlawfully held. Summarize briefly the facts supporting each ground. If necessary, you may attach up to two extra pages stating additional grounds or supporting facts. You should raise in this petition all available grounds for relief which relate to the conviction under attack.

## CAUTION

Before proceeding in a federal court, you are required to exhaust the remedies available to you in the state courts as to each ground on which you request action by the federal court.

3

A)(1) Ground One: Ineffective Assistance of Counsel

(2) Supporting facts:

Isaac Funderburk meets all three prongs of criteria under the Strickland test for ineffective assistance. Firstly, his assistance was not reasonably effective. He failed to propose the obvious alternate theory for the jury, that the victim's father was the perpetrator of the crime. Moore steadfastly maintained her innocence and that the victim's father was the only other adult present in the necessary timeframe in which the child was mortally injured. Instead, Funderburk ludicrously proposed the theory that the child was "clumsy." He failed to even attempt to exclude Appellant Moore's coerced confession and he did not inform her of his flawed defense strategy. He failed to mount a vigorous defense that should have included expert witness testimony and an alternative theory for commission of the crime, not just some ill-advised attempt to portray the child as clumsy.

He misappropriated funds and failed to obtain and utilize expert witnesses that could exonerate Appellant. Funderburk was paid $35,000 for services rendered and allocated an additional $43,000 for expert witnesses, investigators and miscellaneous personal expenses not to total more than $10,000. By his own accounting to the Oklahoma Bar Association he misappropriated over $12,000. In pre-trial consultations, Moore asked counsel what he was going to do about the false confession and he said, "He didn't think it would be excluded." The videotape of the confession clearly shows Moore repeating back what she was told to say by detectives in a numb and robotic fashion after hours of interrogation. Upon review of the record, it is apparent that Funderburk never even attempted to exclude the coerced confession, which was the crux of the prosecution's case! He never used available funds to hire expert witnesses to show that Moore had a personality that was especially prone to succumb to authority and assume

blame for events beyond her control, nor did he use a Shaken Baby Syndrome expert witness. At the time of her confession, she had just been through the harrowing ordeal of watching a child she cared for almost die, the child was in the hospital alone in critical condition and detectives told Moore that the child would die alone if she did not comply and confess. Moore was naïve and believed her innocence would allow her to discount the confession given under duress.

Secondly, Funderburk's strategy (or lack thereof) at trial was not reasonable. From the beginning Appellant adamantly maintained her innocence and stressed to Mr. Funderburk that her confession was false and coerced. The essence of the state's case was this confession. Defense counsel never even considered proposing an alternative theory such as that the father of the victim who had the opportunity to commit the alleged crime was the perpetrator, nor did they explore the possibility that a pre-existing condition (maternal-fetal cocaine exposure) combined with an accidental fall could have caused the injuries leading to the alleged victim's death. There is ample evidence in the literature that so-called Shaken Baby Syndrome is an umbrella diagnosis made whenever a child dies of suspected abuse without gross injuries. Retinal hemorrhaging is seen as de facto pathological proof of Shaken Baby Syndrome, when in fact this is not a slam dunk cause of death and there are experts who can contradict this finding. As mentioned above counsel never challenged Appellant's false confession, he compelled Appellant to testify in her own behalf without adequately preparing her for cross-examination. He failed to subject the voluntariness of her confession to de novo review.

Finally, Funderburk's unreasonable conduct caused sufficient prejudice to warrant remanding Appellant's conviction. There was no valid physical evidence or direct eyewitness testimony to convict Appellant. The prosecution's entire case rested upon a false coerced confession elicited by pressure from the detectives who interrogated her. They told the

Appellant that the victim was going to die alone at the hospital unless she agreed to confess to responsibility, at which time they would release the victim's father to join him at the hospital. Funderburk had knowledge that the defendant had falsely confessed to culpability to protect someone else in the past and chose not to subpoena a witness to the Appellant's previous false confession. Funderburk doomed Appellant to a finding of guilt by not proposing any alternatives to the prosecution's theories. He did not implicate the victim's father, nor elicit eyewitness testimony from a character witness at trial who saw the victim's father shake the Appellant's child when picking him up from daycare. He did not effectively obtain or present expert testimony to the possible alternatives to the prosecution's theory that the victim died from shaken baby syndrome. The victim's injuries could have resulted from a fall that injured already weakened structures and blood vessels resulting from maternal fetal cocaine and nicotine exposure. The victim's father had only been gone from the scene for a few minutes when the victim fell unconscious. Mr. Funderburk did not explore timeframes for the manifestation of symptoms of injury resulting from Shaken Baby Syndrome. Appellant's defense counsel at her trial totally failed to counter any of the prosecution's assertions. He also failed to object to the prosecutor's highly prejudicial closing argument display where she pantomimed Moore shaking the child as she screamed "Shut up! Shut up!" and then the prosecutor characterized these words as "the last words Avery heard." His manner during the entire trial was one of "going through the motions." His failure to act as a vigorous advocate of Moore's innocence doomed her to a conviction. Mr. Funderburk was more interested in the fat bank account the Appellant's supporters had amassed (itself a testimony to her good character) than he was in exonerating the falsely accused woman.

(3) Statement of Exhaustion of State Remedies as to Ground One: Denied on Direct Appeal to OCCA and Application for Post-Conviction Relief to District Court of Oklahoma County, State of Oklahoma.

**Direct Appeal**

    (a) If you appealed from the judgment of conviction did you raise this issue? Yes

    (b) If you did not raise this issue in your Direct Appeal, explain briefly why you did not. N/A

**Post-Conviction Proceedings**

    (c) Did you raise this issue by means of a post-conviction motion or petition for habeas corpus in a state trial court? Yes

    (d) If your answer to (c) is "Yes", state the type of motion or petition, the name and location of the court were the motion or petition was filed, the case number, the result and the date of the court's decision. Application for Post-Conviction Relief filed in the Oklahoma County District Court for the State of Oklahoma, case number CF-2004-351 denied on October 23, 2008.

    (e) Did you receive an evidentiary hearing on your motion or petition? No

    (f) Did you appeal from the denial of your motion or petition? No

    (g) If your answer to (f) is "Yes", state whether this issue was raised in the appeal N/A, and state the name and location of the court where the appeal was filed, the case number and the date of court's decision. N/A

    (h) If your answer to questions (e), (f) or (g) is "No", briefly explain: Granted limited relief on Direct Appeal to OCCA, remanded and modified sentence from life without

7

parole to life with parole. Post-Conviction and Petitioner in Error were both summarily denied by Oklahoma County District Court.

**Other Remedies**

 (I) Describe all other procedures you have used to exhaust your state remedies as to the issue. Petition in Error, dismissed March 9, 2009.

17) Have all grounds for relief raised in this petition been presented to the highest state court having jurisdiction? Yes

18) If you have answered "No" to question 17, state which grounds have not been so presented and briefly give your reason for not presenting them N/A

19) If any of the grounds listed in this petition, were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them. N/A

20) Have you previously filed any type of petition, application or motion in a federal court regarding the conviction under attack? No

21) Do you have any petition, application, motion or appeal now pending in any court, either state or federal, regarding the conviction under attack? No

22) Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: Jennifer Richard, Public Defender's Office, Robert Ravitz, 611 County Office Building, 320 Robert S. Kerr Ave., Oklahoma City, OK 73102

(b) At arraignment and plea: Jennifer Richard

(c) At trial: Isaac Funderburk, 2410 W. Memorial Rd., Ste. C, Oklahoma City, OK 73134-8048

(d) At sentencing: Isaac Funderburk

(e) On appeal: S. Gail Gunning, OIDS

(f) In any post-conviction proceeding: Pro Se

(g) On appeal from any adverse ruling in a post-conviction proceeding: Pro Se

23) Were you sentenced on more than one count of an indictment or on more than one indictment, in the same court and at the same time? No

24) Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? No

## SECOND OR SUCCESSIVE APPLICATIONS

This court is required to dismiss any claim presented in a second or successive petition that the federal court of appeals has authorized to be filed unless the applicant shows that each claim satisfies the requirements of 28 U.S.C. §2244, as amended by Title I of the Antiterrorism and effective Death Penalty Act of 1996, Pub. L. No 104-132, §106, 110 Stat. 1214 (April 24, 1996).

25) If you are raising a claim which you have not presented in prior application have you obtained an order from the United States Court of Appeals for the Tenth Circuit authorizing this district court to consider the application? N/A

Wherefore, petitioner prays that the court grant her such relief to which she may be entitled in this proceeding.

_____  
Signature of Attorney (if any)

*Beverly Michelle Moore*  
Original Signature of Petitioner Pro Se

_____  
(Attorney's full address and telephone number)

**NOTE: DECLARATION NEXT PAGE**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares (or certifies, verifies, or states) under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at McLoud, Oklahoma on September 1, 2009.

*Beverly Michelle Moore*
Original Signature