IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEVERLY MICHELLE MOORE ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-09-985-C |
| ) | |
| WARDEN MILLICENT NEWTON- ) | |
| EMBRY, ) | |
| ) | |
| Respondent. ) | |

**PETITIONER'S RESPONSE TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P 56(F) OR, ALTERNATIVELY, MOTION FOR EXTENSION OF TIME**

Petitioner, Beverly Michelle Moore, respectfully requests that the Court deny Respondent's motion pursuant to Fed. R. Civ. P. 56(f)(1), made applicable via Rule 11 of the Rules Governing Section 2254 Cases. Alternatively, Petitioner seeks an enlargement of time to respond that is sufficient to permit her to obtain the discovery identified in the attached affidavit (Exhibit 1) executed by her appointed counsel. In support of her motion, Petitioner presents the following arguments and authorities.

Petitioner Beverly Michelle Moore claims through her habeas petition that she received the ineffective assistance of counsel in her direct court proceedings in contravention of the Sixth Amendment. That claim rests, in considerable part, on the failure to present medical experts to challenge the conclusions related to shaken baby or shaken impact syndrome (SBS).

SBS is a relatively unique diagnosis in the sense that the diagnosis itself historically has provided all elements of the crime - the act itself (as nonintentional) and the identity as to who

caused the act. Deborah Tuerkheimer, *The Next Innocence Project*, 87 Wash. U. L. Rev. 1, 5 (2009). As in Petitioner's case, the presence of the "triad" of symptoms – cerebral edema, subdural hematoma, and retinal hemorrhaging – generally results in the fateful diagnosis and, like Petitioner, the party present with the child when the symptoms presented themselves is classified as the abuser. Id. at 4-5.

However, further scientific studies have found that these symptoms may be caused in manners other than intentional shaking, including due to pre-existing disorders and short falls and that children can have a "lucid interval" between the time of any injury and the time of deterioration. Horace B. Gardner, *A Witnessed Short Fall Mimicking Presumed Shaken Baby Syndrome (Inflicted Childhood Neurotrauma)*, 43 Pediatric Neurosurgery 433-35 (2007) (attached as Exhibit 2); W. Goldsmith and J. Plunkett, *Biomechanical Analysis of the Causes of Traumatic Brain Injury in Infants and Children*, 25 Am. J. Forensic Med. Pathol. 89-100 (2004) (impact from a short distance fall can be fatal and include a "lucid interval"); Mark Donohoe, *Shaken Baby Syndrome (SBS) and Non-Accidental Injuries (NAI)*. Aug 20, 2001, § 1.2.1, *available at* http://whale.to/v/sbs.html (giving a "framework for assessing assumptions and evidence" regarding SBS). Thus, both the cause and culprit are subject to significant debate.

Petitioner's counsel's failure to adequately investigate facts and present medical testimony as to the significance of the conditions and behaviors of the alleged victim preceding his death, and the failure to investigate and present testimony from a credible witness regarding the father (and alternative perpetrator)'s prior "shaking" of another child, adversely affected the outcome of Petitioner's trial. Other than what Petitioner would characterize as a compelled confession, Petitioner has steadfastly maintained her innocence.

Petitioner recognizes the one-year requirement within which she was required to bring her claim for relief under 28 U.S.C. § 2254. Although her failure to meet the one-year filing requirement was due to her ignorance of the law, including her confusion as to which court was the proper court in which to file her state post-conviction pleadings, she also recognizes that ignorance of the law, even for an incarcerated person, generally does not excuse a late filing.

The one-year filing requirement, however, can be equitably tolled based on a claim for actual innocence. Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007). It is on this basis that Petitioner seeks to avoid the ADEPA period of limitation. Petitioner recognizes that to qualify for the "actual innocence" exception, she bears the burden of presenting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Petitioner believes that, if afforded sufficient time for discovery, she could present all three types. Petitioner asserts that evidence of her actual innocence should be presented via evidentiary hearing and, if she is able to establish by a preponderance of the evidence that in light of that evidence no reasonable juror would have found her guilty beyond a reasonable doubt, she would be permitted to present her claim for habeas relief based on ineffective assistance. See id.; Larsen v. Adams, 642 F.Supp. 2d 1124 (C.D. Cal. 2009) (holding an evidentiary hearing on what the court characterized as a "gateway" claim for actual innocence on an otherwise time-barred habeas claim); also cf. In re Davis, 130 S. Ct. 1 (August 17, 2009) (remanding to district court for hearings on independent claim of actual innocence).

Petitioner has diligently sought the evidence that she believes supports her claim of actual innocence. The record in this case alone demonstrates multiple attempts at securing medical records

relative to the victim that Petitioner believes contain key information in supporting her argument that the victim's death was either (1) not an intentional act of violence, or (2) that the child could have experienced a lucid interval between the time of any intentional act and his outward display of symptoms. Evidence of either of those explanations would have cleared Petitioner of any liability. However, because of her ignorance of the law and the discovery process in particular, coupled with the non-responsiveness of the medical providers, Petitioner was unable to obtain these records until such time that counsel was appointed, and a court order compliant with HIPAA obtained. In reality, the last of these records were not received by counsel for Petitioner until the week of September 13, 2010. In addition to obtaining these records, Petitioner has spoken with a witness who has provided information relative to the condition of Avery in the weeks and months prior to his death, which Petitioner believes will be medically significant in supporting the claim that a undiagnosed medical condition caused the death of A.S. This eyewitness testimony is from an unrelated and unbiased third party and the Court should consider it to be credible. Notably, this eyewitness also observed behavior on the part of the victim's father, the victim's sole caregiver in the hours (up to minutes) before A.S. began showing symptoms of distress, and another child that is consistent with the type of behavior of which Petitioner was accused and convicted. Therefore, with this evidence, Petitioner contends that she can demonstrate that it is more likely than not, in light of the new evidence "no reasonable jury would find [her] guilty beyond a reasonable doubt". Schlup, 513 U.S. at 324; cf. Libertarian Party of NM v. Herrera, 506 F.3d 1303, 1309 (10th Cir. 2007) (party submitting Rule 56(f) affidavit should show how the evidence would rebut the motion for summary judgment).

      Petitioner cannot demonstrate the exculpatory nature and significance of the eyewitness

testimony and the new physical evidence in the form of medical records without a medical expert. Through expert discovery, Petitioner believes she will obtain the following, (1) that the medical records and eyewitness testimony regarding the child's behavior in the weeks leading up to his death support an alternative cause of the conditions that ultimately caused his death, and (2) that the child could have suffered from a lucid interval of sufficient length that any alleged injuries occurred *prior* to the child being place in Petitioner's exclusive care. Petitioner has now had the medical records for merely a matter of weeks. Petitioner is indigent and the efforts of her counsel to obtain a medical expert have been significantly hampered by that fact. Although Petitioner and her family have exchanged correspondence or telephone calls with potential experts, no expert has been formally retained. Even if a medical expert(s) were able to be secured by the date set for a response, the review of the medical information could not reasonably take place within that period. Therefore, pursuant to Fed. R. Civ. P. 56(f), Petitioner is asking the Court to deny the current motion without prejudice to enable the parties to conduct expert discovery.

     Alternatively, Petitioner requests that the Court continue the response date for the pending motion to enable her to conduct expert discovery. In addition to the above, Petitioner asserts that she is reliant on her appointed counsel to contact various innocence projects and prospective experts in an effort to retain qualified physicians without cost, or, if appropriate, present a motion to this Court seeking payment of expert witness fees. Her counsel, however, is a sole practitioner and is expecting to be in a week-long trial in a case pending on the civil trial docket of the Honorable Tim DeGuisiti, which begins on October 12, 2010. Further complicating matters is the fact that Petitioner's trial counsel, Isaac Funderburk, is no longer listed as a practicing attorney in the state of Oklahoma and, therefore her currently-appointed counsel has no ready means to gain access to

any materials that may be in Petitioner's file, including materials gathered in the criminal proceedings.

Were the Court to determine that it was more appropriate under Fed. R. Civ. P. 56(f) to continue the motion rather than deny it, Petitioner requests that, rather than set a date certain for a response, the Court set a status conference or require a status report to be filed in the next 45 days to address the efforts being made by Petitioner's counsel, any expectations or issues of the parties with the anticipated procedure of conducting expert discovery (including any requirements for expert reports or other discovery), etc. As no trial or other proceedings have been set, the described extension will not impact any deadlines. Counsel for Respondent has indicated that he does not object to the requested extension.

## Relief Requested

Petitioner respectfully requests that the Court deny the Respondent's motion for summary judgment *without prejudice* in accordance with Fed. R. Civ. P. 56(f), made applicable to this proceeding through Rule 11 of the Rules Governing 2254 Cases. Alternatively, Petitioner respectfully requests that the Court continue the pending motion and permit Petitioner to provide a substantive response after she has had the opportunity to conduct expert discovery.

Respectfully Submitted,

s/Christine Cave
Christine Cave, OBA #19774
Employers Legal Resource Center
301 NW 63rd Street, Suite 390
Oklahoma City, Oklahoma 73116
Phone:        405-702-9797

        Fax:        405-576-3956
        Email:     ccave@okemployerlaw.com
                     mainoffice@okemployerlaw.com
ATTORNEY FOR BEVERLY MICHELLE MOORE

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 4th day of October, 2010, I electronically transmitted the attached document to the Court Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jared Looper
Diane Slayton
COUNSEL FOR DEFENDANT


                                                      s/Christine Cave
                                                       Christine Cave