IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BEVERLY MICHELLE MOORE,   )
                         )
     Petitioner,        )
                         )
v.                       )       CIV-09-985-G
                         )
DEBBIE ALDRIDGE, Warden,   )
                         )
     Respondent.      )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, has filed a Second
Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and a Brief
in Support of Second Amended Petition for Writ of Habeas Corpus, Doc. Nos.
226, 227, challenging her conviction for First Degree Murder. Respondent has
filed a Response, Doc. No. 234, and Petitioner has replied. Doc. No. 239.

This case, originally assigned to United States District Judge Robin
Cauthron, was reassigned to United States District Judge Charles Goodwin on
September 12, 2018. Doc. No. 217. On April 4, 2019, Judge Goodwin referred
this matter to the undersigned Magistrate Judge for proceedings consistent with
28 U.S.C. § 636(b)(1)(B).

As more fully set out below, after a careful review of the factual background, the procedural history and the issues presented by the parties, the undersigned finds the evidence of actual innocence previously presented to this Court is persuasive.  Considering all the evidence, old and new, the undersigned concludes that had the newly-discovered evidence been admitted at trial, it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.  Thus, the new evidence presented to this Court is sufficient to overcome the procedural bar applied to her claims for relief by the state courts as well as the potential time bar set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Having concluded that this Court should consider the merits of the claims for habeas relief set forth in Petitioner's Second Amended Petition for Writ of Habeas Corpus, the undersigned recommends the Respondent be ordered to address and respond to the merits of Petitioner's claims.

I.     Factual Background

The parties are intimately familiar with the facts of this case, and they need not be repeated in extensive detail here.  Petitioner was convicted of murder in the first degree for a homicide involving her boyfriend's son, A.S., who died from injuries allegedly inflicted by Petitioner having shaken the boy on January 13, 2004.  The child's father had left his son alone with Petitioner at approximately

2:45 p.m. on January 13, 2004.  Approximately 13 minutes later, at 2:58 p.m., Petitioner called 911 telling emergency workers that her boyfriend's son had fallen, had a bump on the back of his head, and was only "sort of" breathing.[1]

The child was taken to Baptist Integris Medical Center where the treating physician immediately suspected child abuse—specifically "shaken baby syndrome."  Petitioner was ultimately convicted based on the testimony of Dr. Johnny Griggs, the emergency room physician who treated A.S., Dr. David Korber, an ophthalmologist who treated A.S., and forensic pathologist, Dr. Chai Choi, who performed the autopsy on A.S., Petitioner's confession, and the fact that Petitioner was the last person alone with the child when he began to exhibit symptoms similar to those of a seizure.  The medical experts all testified that A.S. exhibited symptoms consistent with those of "shaken baby syndrome," a conclusion shared with Dr. Choi before she performed the autopsy on A.S. Petitioner's defense attorneys did not procure the testimony of any expert witness who could have rebutted the conclusions of the treating physicians that the injury had occurred only minutes before the child exhibited the symptoms that prompted Petitioner to call for help.  The trial judge excluded the testimony of fact

---

[1] After repeated questioning, Petitioner agreed with the police who insisted she had shaken A.S.

witnesses who would have testified that A.S. had fallen several times before January 13, 2004.

## II.   Procedural Background

The summary of the lengthy procedural history of this case is based on the undisputed procedural history included in Petitioner's Brief in Support of Second Amended Petition for Writ of Habeas Corpus, Doc. No. 227 at 27-34, documents attached to Respondent's Response to Second Amended Petition for Writ of Habeas Corpus, Doc. No. 234, and documents filed in this habeas action.

At trial, Petitioner was initially represented by Assistant Public Defender, Jennifer Chance.  After Petitioner's mother retained attorney Isaac Funderburk, he and David Slane filed their entries of appearance on February 10, 2005.  Doc. No. 227 at 27.  Later, attorney Eric Reynolds joined the team and the three represented Petitioner at the jury trial held from September 12-16, 2005.  *Id.*

After a jury found Petitioner guilty, the Honorable Susan P. Caswell followed the jury's recommendation and entered judgment and sentence in the District Court of Oklahoma County on October 11, 2005.  Plaintiff was sentenced to life without possibility of parole.  *Id.*

Attorney David Slane filed an application for post-conviction relief, seeking an appeal out of time on November 9, 2005, and the application was

granted.  *Id.*   Through counsel, Petitioner filed a notice of intent to appeal on

January 20, 2006, with the following proposed list of errors:

    a.    Defendant was not allowed to put on evidence of her theory of the case, which was crucial to her defense.

    b.    Defendant's witnesses were limited to character testimony only.

    c.    Defendant was not allowed to introduce a taped police interview of Todd Snyder [A.S.'s father and Petitioner's boyfriend at the time of A.S's death].

    d.    Potential ineffective assistance of counsel.

    e.    Any additional error found by appellate counsel.

However, the attorney who ultimately filed Petitioner's appellate brief on direct

appeal alleged only two propositions of error:

> Proposition I: The jury should have been instructed on the definition of Life Without Parole and that if sentenced to Life With Parole, Ms. Moore would have to serve 85% of her sentence; and

> Proposition II: Defense counsel rendered ineffective assistance of counsel by not requesting argument or instruction on parole ineligibility or application of the 85% Rule to any sentence given to Ms. Moore.

*Id.* at 27-28.   On June 11, 2007, the Oklahoma Court of Criminal Appeals

("OCCA") affirmed Petitioner's conviction on direct appeal, Case No. F-2006-

63, but modified her sentence to life imprisonment with the possibility of parole,

based on the trial court's failure to instruct the jury on the 85% Rule.  *Id.* at 28.

    Petitioner filed a *pro se* application for post-conviction relief on September

26, 2008, alleging a single proposition for relief:

> Proposition I: Defense counsel rendered ineffective assistance of
> counsel by failing to have a medical expert testify to medical
> evidence proving the child was not killed by shaking.

The Oklahoma County District Court denied Petitioner's application on October

23, 2008, and notified her of her right to appeal to the OCCA. *Id.* Petitioner, still

proceeding *pro se*, filed a petition in error in the OCCA on January 16, 2009,

alleging thirteen instances of ineffective assistance of counsel by Attorney Isaac

Funderburk:

> a.    Counsel failed to communicate with co-counsel as to the
> existence of two favorable exculpatory witnesses that [she]
> explicitly requested to be put on the stand in [her] defense.
>
> b.    Co-counsel was never made aware of the fact that there was
> over $40,000 in a trust account for expert witnesses and
> investigators, which he complained to [her] about after [her] trial.
>
> c.    Because of counsel's flawed defense, he excluded valuable
> foundational evidence.
>
> d.    Counsel failed to elicit evidence from character witnesses
> who would have been vital defense witnesses, because it did not fit
> with his flawed defense.
>
> e.    Counsel did not try to exclude the coerced confession, which
> was the sole evidence for prosecution.
>
> f.    Counsel did not give an alternative theory for [her] defense
> that further compounded his flawed defense and his lack of strategy
> in clearing [her] of the charge of Murder in the 1st Degree.
>
> g.    [She] had insufficient counsel which resulted in sufficient
> prejudice to warrant a retrial.

h.     The crib sheet that was admitted as evidence was not disputed by counsel even though the father's testimony told the court that the stain was not current.

i.     The daycare provider was brought in as a character witness, which limited her testimony.  Had she been brought in as an exculpatory witness, her testimony would have been beneficial to the outcome of the trial.  Her testimony was vital to [her] defense.

j.     Counsel did not even counter any of the prosecution's assertions.

k.     Counsel forced [her] on the stand without adequate preparation and told [her] that [she] would definitely be convicted if [she] upheld [her] adamant reluctance to testify.  Counsel did not prepare [her] adequately before [she] took the stand.

l.     It would behoove counsel for [her] to be found guilty so that his financial misconduct would not be brought to light.

m.     Counsel's failure to focus attention on the actual preparator, the victim's father, resulted in sufficient harm for reversible error per *Strickland v. Washington*.

*Id.* at 29.  The OCCA dismissed Petitioner's appeal for lack of jurisdiction on procedural grounds—Petitioner had failed to attach a certified copy of the district court's order denying post-conviction relief to her petition in error.  *Id.* at 29-30.

On September 4, 2009, Petitioner, still proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in this Court, alleging ineffective assistance of counsel.  Doc. No. 1.  The State filed a Motion to Dismiss the Petition and Brief in Support, Doc. Nos. 10, 11, on the grounds that the Petition was filed after the statute of limitations in the AEDPA had expired.  Then Magistrate Judge Robert

Bacharach,[2] to whom the case had been referred for initial proceedings, converted Respondent's Motion to Dismiss to a Motion for Summary Judgment on November 4, 2009.  Doc. No. 12.

On December 9, 2009, Petitioner filed a Motion for Leave to Amend Habeas Petition.  Doc. No. 17.  Judge Bacharach granted the Motion, Doc. No. 21, and Petitioner filed her Amended Petition and Brief in Support, Doc. Nos. 22, 23, on February 2, 2010, alleging the same propositions of error as the first Petition and claiming that she was entitled to equitable tolling because she was factually innocent of the crime for which she was convicted.

The State filed a Motion to Dismiss the Amended Petition on February 23, 2010, again alleging it was time-barred.  Doc. Nos. 24, 25.  After a telephone conference with the parties, Judge Bacharach appointed counsel to represent Petitioner on July 14, 2010, Doc. No. 57, and Petitioner, through her court-appointed attorney, engaged in discovery and filed a Response on January 31, 2011.  Doc. No. 88.

On February 16, 2011, the Court converted the State's Motion to Dismiss to a limited Answer on the issue of timeliness.  Petitioner replied on April 8, 2011, and filed two appendices with documented newly-discovered evidence supporting her claim that she was actually innocent of the crime for which she

---

[2] Judge Bacharach is currently sitting as a Judge on the Tenth Circuit Court of Appeals.

had been convicted.  Doc. Nos. 108-111.  The State filed a Sur-Reply.  Doc. No. 116.  Judge Bacharach considered the evidence included in the appendices and filed an Order granting the admission of certain exhibits included in Petitioner's Motion to Expand the Record, and denying the admission of certain other exhibits.  Doc. No. 132.

Thereafter, Petitioner filed a Motion for Leave to File Reply to Brief on the Merits of Actual Innocence Claim.  Doc. No.118.  The Court granted the Motion, and Petitioner filed her Supplemental Reply on June 29, 2011.  Doc. No. 122.

The expert evidence Petitioner submitted with her brief, particularly the expert evidence on the issue of the time the fatal injury was inflicted, was compelling.  In fact, it was so compelling that on September 7, 2011, Judge Bacharach issued Proposed Findings of Fact and Conclusions of Law finding Petitioner had produced sufficient new scientific evidence from medical experts to support the "miscarriage of justice," or "actual innocence," exception to the time-bar:

> [N]o reasonable jury could have found guilt of murder without some reason to believe the actions [of Petitioner] on January 13, 2004, had contributed to the death [of A.S.].  Doctors Mack, Barnes, Squier, Ophoven, and Gardner have uniformly opined, based on the medical findings of the State's own expert witnesses, that the fatal injuries would have preceded January 13, 2004, by days, weeks, or months.

The only persons to express a different conclusion were Doctors Griggs and Choi, and both assumed that A.S. had been a perfectly healthy child before January 13, 2004. And, of course, they thought so only because Dr. Griggs had either misunderstood or Ms. Moore had given misinformation. But no one disputes the evidence of: (1) falls in October 2003, December 2003, and January 2004: (2) the existence of significant developmental delays; and (3) lethargy in the week preceding A.S.'s death. With this undisputed evidence, no reasonable juror would have accepted the testimony of Doctors Griggs and Choi regarding the immediacy of the fatal injuries. Without this testimony, the jury would have had no basis to tie A.S.'s death to anything Ms. Moore had done on or about January 13, 2004, as charged in the Information. The omission of any such evidence on this crucial link in the prosecution's case would have required any reasonable jury to find Ms. Moore not guilty with the benefit of the old and new evidence. Thus, Ms. Moore has shown her actual innocence on the charged offense and that innocence entitles her to avoid the time-bar.

Doc. No. 135 at 33-34. Over Respondent's objection, Judge Cauthron adopted the Proposed Findings of Fact and Conclusions of Law in full on October 28, 2011. Doc. No. 139.

Although Judge Bacharach ordered Respondent to file a response to the merits of Petitioner's grounds for habeas relief, the State instead filed a limited answer contending Petitioner had failed to exhaust state court remedies as to the claims in her Amended Petition. Doc. No. 159. Judge Bacharach entered a Report and Recommendation in which he determined that requiring Petitioner to return to state court to exhaust state court remedies would be futile because the State courts would find Petitioner was procedurally barred from asserting her claims in a second application for post-conviction relief. On this basis, Judge

Bacharach recommended Petitioner's failure to exhaust be excused as it would be futile for her to return to the state courts. He further recommended that Petitioner be allowed to proceed with her habeas action. Doc. No. 162.

On April 6, 2012, Judge Cauthron declined to adopt Judge Bacharach's recommendation and did not address whether the conclusions in the Report and Recommendation were accurate. Instead, Judge Cauthron focused on the newly-discovered evidence, the state attorneys' insistence Petitioner be required to present this matter to the state courts before continuing with habeas proceedings, and the doctrines of comity and federalism. Based on these considerations, Judge Cauthron entered an Order staying the habeas case until Petitioner had presented her claims to the state courts. Doc. No. 182.

As directed, Petitioner filed a second application for post-conviction relief in the Oklahoma County District Court and brief in support, along with a motion for evidentiary hearing, motion for discovery, and motion for appointment of counsel. In her application, she raised six propositions for relief:

> Proposition 1: Ineffective Assistance of Trial Counsel for (a) failure to fully investigate the cause of death and the timing of the injuries attributed to Petitioner, including the failure to timely consult with and retain expert witnesses, and (b) failure to present testimony from expert witnesses as to the cause and timing of the fatal injuries.
>
> Proposition 2: Ineffective Assistance of Trial Counsel resulting from conflicts of interest.

Proposition 3: The State of Oklahoma Deprived Petitioner of her Right to Due Process When it Failed to Disclose Exculpatory Evidence.

Proposition 4: Ineffective Assistance of Appellate Counsel for failing to raise the claim of ineffective assistance of trial counsel arising out of failure to investigate medical issues and present medical testimony.

Proposition 5: Ineffective Assistance of Appellate Counsel who failed to uncover the conflict of interest of trial counsel and raise the claim of ineffective assistance of trial counsel arising from the conflict.

Proposition 6: Ineffective Assistance of Appellate Counsel based on failure to discover the violation of *Brady v. Maryland* and raise the claim on direct appeal.

Doc. No. 227 at 31-32; Doc. No. 234-7.

After two hearings, Judge Kenneth C. Watson granted Petitioner's motion for discovery and ordered the State to make its file in Petitioner's criminal case and the file in the case of *State v. Funderburk*, CF-2003-6954,[3] available to Petitioner. Additionally, the trial court permitted discovery of the medical examiner's file and the financial and medical records of Isaac Funderburk. *Id.*

The State filed a response to Petitioner's second application for post-conviction relief on September 4, 2012, arguing Petitioner's claims were

---

[3] *State v. Funderburk*, District Court of Oklahoma County, Case No. CF-2003-6954, was a case involving criminal charges against Petitioner's former attorney, Isaac Funderburk, wherein he was convicted of misdemeanor possession of a Schedule III controlled dangerous substance and driving under the influence of alcohol.

procedurally barred by the doctrines of waiver and res judicata and, alternatively, were without merit.  *Id.*

On July 9, 2013, Judge Watson announced his finding that Petitioner was not barred from presenting the claims raised in the application and overruled the State's request for dismissal based on procedural bar grounds.  By agreement of the parties, Petitioner's claims were divided into two separate parts: the first hearing would be devoted to consideration of whether trial counsel rendered deficient performance or labored under a conflict of interest.  The second hearing would consider whether Petitioner suffered resulting prejudice if trial counsels' representation was ineffective.   Petitioner's *Brady* claim was also to be considered at the second hearing.  *Id.*

In an evidentiary hearing stretching over eight months, the trial court heard testimony on the issue of whether Petitioner's trial counsel had either rendered deficient performance or labored under a conflict of interest.  Petitioner appeared and was represented by appointed counsel Christine Cave and Assistant Public Defender Andrea Miller.   The State was represented by Assistant District Attorneys Gayland Gieger and Jennifer Hinsperger.  *Id.* at 33.

Four years after Judge Watson's order granting an evidentiary hearing, the attorneys finally received transcripts of the hearing and filed their proposed

findings of facts and conclusions of law, as ordered by the trial court, on January 17, 2017. *Id.*

After another fourteen months had elapsed with no ruling from the trial court, Petitioner, on March 23, 2018, requested this Court lift the stay in Petitioner's federal habeas action and excuse her from having to further exhaust her claims. Petitioner contended that her due process rights had been violated by the lengthy state court proceedings and the anticipated future state court proceedings. Doc. No. 213.

Four days later, on March 27, 2018, the trial court entered its findings of facts and conclusions of law. Doc. No. 227-2. The trial court essentially adopted the State's proposed findings from January 2017, Doc. No. 227-3, reached the merits of Petitioner's ineffective assistance of counsel claim, and denied her application for post-conviction relief. Doc. No. 227-2. Judge Cauthron denied Petitioner's previously-filed Motion to Lift the Stay on May 30, 2018. Doc. No. 216.

Petitioner filed a notice of post-conviction appeal on April 5, 2018, and filed a brief in support of her post-conviction appeal in the OCCA on August 1, 2018. The OCCA declined to reach the merits of Petitioner's appeal, finding all claims were waived because they had not been raised in her direct appeal. Doc. No. 234-12 at 9.

On November 9, 2018, Petitioner notified this Court that the OCCA had rendered its decision, resolving the appeal from the trial court's post-conviction ruling.   Doc. No. 218.   For good cause shown, Judge Goodwin granted Petitioner's Motion to Lift Stay on January 18, 2019, and ordered Petitioner to file "any amended pleading" on or before March 19, 2019.  Doc. No. 219.  After the deadline was extended, Petitioner filed her Second Amended Petition and Brief in Support on April 19, 2019, raising the same claims she had raised in her second application for post-conviction relief.  Doc. Nos. 226, 227.

III.   Issues Raised in the Second Amended Petition for Writ of Habeas Corpus

Petitioner raises the following grounds for relief in her Second Amended Petition for Writ of Habeas Corpus:

A. Ground One: Ineffective Assistance of Trial Counsel for:

1.  failure to fully investigate the cause of death and the timing of the injuries attributed to Petitioner, including the failure to timely consult with and retain expert witnesses, and

2.  failure to present testimony from the expert witnesses as to the cause and timing of the fatal injuries.

B. Ground Two: Ineffective Assistance of Trial Counsel caused by Trial Counsel's Conflict of Interest.

C. Ground Three: The State of Oklahoma Deprived Petitioner of Her Right to Due Process When it Failed to Disclose Exculpatory Evidence.

D. Ground Four:   Ineffective Assistance of Appellate Counsel Due to Failure to Raise the Claim of Ineffective Assistance of Trial Counsel

Arising Out of Failure to Investigate Medical Issues and Present Medical Testimony.

E. Ground Five:  Ineffective Assistance of Appellate Counsel Due to Failure to Uncover the Conflict of Interest of Trial Counsel and Raise the Claim of Ineffective Assistance of Trial Counsel Arising from the Conflict.

F. Ground Six:  Ineffective Assistance of Appellate Counsel Due to Failure to Discover the Violation of *Brady v. Maryland* and Raise the Claim on Direct Appeal.

Doc. Nos. 226, 227.

## IV.   Response to Second Amended Petition for Habeas Relief

Without addressing the merits of Petitioner's grounds for relief, Respondent resorts to previous arguments made before this Court—that Petitioner's grounds for relief are unexhausted, untimely or procedurally barred. Respondent faults Petitioner for not presenting the new scientific evidence to the state courts and invites this Court to revisit its previous ruling that the new scientific evidence Petitioner previously presented to this Court is sufficient to satisfy the miscarriage of justice exception to procedural bar.   Finally, Respondent attempts to side-step review of Petitioner's grounds for relief by arguing that the new scientific evidence supporting application of the miscarriage of justice exception does not directly apply to Petitioner's ineffective assistance of counsel claims.

V.     Miscarriage of Justice Exception to Procedural Bar

Respondent misapprehends how the miscarriage of justice exception to procedural bar is applied by federal courts to allow review of the merits of petitions that would otherwise be barred from review.  It is not necessary, as Respondent implies, that there be newly discovered evidence relevant to every ground for habeas relief asserted.  Rather, newly-discovered evidence so strong that it undermines a federal court's confidence in a petitioner's conviction opens a gateway through which the habeas petitioner must pass to have his or her otherwise barred constitutional claims considered on the merits.  *Slinkard v. McCollum*, 675 F. App'x 851, 855 (10th Cir. 2017).

The Supreme Court has yet to decide whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993).  As noted, a convincing claim of actual innocence may serve only as a gateway to federal habeas review of otherwise procedurally barred claims, as applied in *Schlup v. Delo*, 513 U.S. 298 (1995), and further explained in *House v. Bell*, 547 U.S. 518 (2006).  As the Supreme Court acknowledged in *House*, claims that a state court would find procedurally barred generally preclude federal habeas review except in limited, extraordinary cases:

> Out of respect for the finality of state-court judgments federal habeas courts, as a general rule, are closed to claims that state courts

> would consider defaulted.  In certain exceptional cases involving a
> compelling claim of actual innocence, however, the state procedural
> default rule is not a bar to a federal habeas corpus petition.  *See
> Schlup v. Delo*, 513 U.S. 298, 319–322 [] (1995).  After careful
> review of the full record, we conclude that House has made the
> stringent showing required by this exception; and we hold that his
> federal habeas action may proceed.

*House*, 547 U.S. at 522.  *House* recognized with approval the standard set

forth in *Schlup*:

> In *Schlup*, the Court adopted a specific rule to implement this
> general principle.  It held that prisoners asserting innocence as a
> gateway to defaulted claims must establish that, in light of new
> evidence, "it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt." 513 U.S.,
> at 327 [].  This formulation, *Schlup* explains, "ensures that
> petitioner's case is truly 'extraordinary,' while still providing
> petitioner a meaningful avenue by which to avoid a manifest
> injustice." *Ibid.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 []
> (1991)).  In the usual case, the presumed guilt of a prisoner
> convicted in state court counsels against federal review of defaulted
> claims.  Yet a petition supported by a convincing *Schlup* gateway
> showing "raise[s] sufficient doubt about [the petitioner's] guilt to
> undermine confidence in the result of the trial without the assurance
> that that trial was untainted by constitutional error"; hence, "a
> review of the merits of the constitutional claims" is justified.  513
> U.S., at 317 [].

*House*, 547 U.S. at 536–37.

In *Schlup* and *House,* a convincing showing of actual innocence enabled

habeas petitioners to overcome state procedural bars to consideration of the

merits of their constitutional claims.  In *McQuiggin v. Perkins*, 569 U.S. 383

(2013), the Court considered whether a petitioner asserting an actual innocence

claim could overcome the bar to bringing a petition that would otherwise be untimely filed under the 28 U.S.C. § 2244(d)(1) statute of limitations prescribed in the AEDPA.  The Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or . . . expiration of the statute of limitations."   *Id.* at 386.   The Court emphasized, however, that the actual innocence gateway applies only to exceptional cases:

> We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S.[] at 329 []; *see House*, 547 U.S.[] at 538 [] (emphasizing that the *Schlup* standard is "demanding" and seldom met).

*Id.*

In this case, Petitioner presented reports by five medical experts expressing opinions constituting newly-discovered scientific evidence regarding the time period during which A.S. could have sustained the injuries resulting in his death: Julie Mack, M.D., a radiologist, Janice Ophoven, M.D., a pathologist, Waney Squier, M.D., a neuropathologist, Horace Gardner, M.D., an ophthalmologist, and Patrick Barnes, M.D., a neuroradiologist.   Doc. No. 135 at 8.   Judge Bacharach characterized the reports as reflecting opinions in two broad categories: (1) criticism of the conclusions expressed by Doctors Griggs, Korber,

and Choi, tying the boy's death to trauma or shaken baby syndrome; and (2) expression of a belief that if the death had involved trauma, the injury would have been inflicted days, weeks, or months before January 13, 2004. *Id.* Judge Bacharach acknowledged that expert opinions pertaining to the first broad area might be attributed merely to a "battle of the experts" and that the jury could have reasonably believed either side's experts. *Id.* at 10.

However, Judge Bacharach identified the key issue for purposes of the claim of actual innocence as "whether a reasonable jury would have attributed the death to Ms. Moore's actions on January 13, 2004[,]" had they heard the newly-discovered expert testimony. *Id.* at 2. As Judges Bacharach and Cauthron found, the newly-discovered expert scientific evidence pertaining to the timing of any trauma that might have caused the death of A.S. was sufficient to undermine Petitioner's conviction:

> [T]he Information was specific in charging Ms. Moore with the commission of a murder "on or about" January 13, 2004. Thus, if Ms. Moore had not caused the injuries on January 13, 2004, the jury would have had no reason to blame her for the trauma or for murder. In these circumstances, the timing of the death provided a critical link in the prosecution's theory of guilt. With the new collection of expert reports, that link appears unsupportable because of the undisputed scientific evidence that the trauma would have preceded the collapse by days, weeks, or months.

*Id.* at 11. Judge Bacharach also noted the testimony of the State's experts—that traumatic injury would have immediately resulted in a loss of consciousness—

was based on their belief in the absence of any prior traumatic episodes. *Id.* But Judge Bacharach found the following undisputed evidence of prior injuries and possible pre-existing conditions—excluded from admission by the trial court— to also be compelling: a prior diagnosis of a "failure to thrive"; a fall from a porch in October 2003 resulting in edema, contusions, and a hematoma; the existence of significant developmental delays; two falls in December 2003, one involving a landing on a tile and concrete floor; a fall in a cast iron tub roughly one week before A.S. died; and observations that A.S. had appeared to be lethargic in the week preceding his death. *Id.* at 12.

The newly-discovered evidence before this Court in September 2011 is just as compelling today. The undersigned concludes that Petitioner's case is one of the truly exceptional cases involving a compelling claim of actual innocence sufficient to require this Court to consider her constitutional claims.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Respondent be ordered to respond to the merits of Petitioner's constitutional claims. The parties are advised of their rights to object to this Report and Recommendation by filing an objection with the Clerk of this Court by ___January 2nd___, 2020, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation will result in waiver of appellate review of the

recommended ruling. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this  12th  day of  December , 2019.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE