# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BEVERLY MICHELLE MOORE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-09-985-G** |
| | ) | |
| **TAMIKA WHITE, Warden,** | ) | |
| | ) | |
| **Respondent.[1]** | ) | |

## <u>ORDER</u>

Petitioner Beverly Michelle Moore, a state prisoner appearing through counsel, filed this action seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Following extensive proceedings, including a stay pending primary determination by the state courts of issues raised herein by Petitioner, the controlling pleading—Petitioner's Second Amended Petition—was filed.  *See* Second Am. Pet. (Doc. No. 226); Pet'r's Br. (Doc. No. 227).  Respondent, Warden Tamika White, filed an Answer (Doc. No. 250), and Petitioner filed a Reply (Doc. No. 254).

In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Gary M. Purcell for initial findings and recommendations.  Judge Purcell issued a Supplemental Report and Recommendation ("Suppl. R. & R.," Doc. No. 261), in which he recommended that Petitioner's request for habeas relief be conditionally granted.  Respondent filed an Objection (Doc. No. 264), to which Petitioner has responded (Doc.

---

[1] The current warden of the facility where Petitioner is incarcerated is hereby substituted as Respondent.  *See* R. 2(a), R. Governing § 2254 Cases in U.S. Dist. Cts.; Fed. R. Civ. P. 25(d), 81(a)(4).

No. 267).  Having conducted the requisite de novo review of the Supplemental R. & R., the Court finds and concludes as follows.

PROCEDURAL HISTORY

Petitioner's state- and federal-court proceedings have followed a circuitous path. *See* Mem. Op. & Order of Nov. 5, 2014 (Cauthron, J.) at 1-4 (Doc. No. 208); R. & R. of Dec. 12, 2019 (Purcell, Mag. J.) at 4-15 (Doc. No. 244).  The Court will discuss that background herein only as necessary to evaluate the currently pending Second Amended Petition.

In September of 2005, following a jury trial in the District Court of Oklahoma County, Oklahoma, Petitioner was convicted of murder in the first degree of her boyfriend's 22-month-old son, A.S., by use of unreasonable force.  Petitioner was sentenced to life imprisonment without the possibility of parole.  *See State v. Moore*, No. CF-2004-351 (Okla. Cnty. Dist. Ct.).[2]  Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), which affirmed the conviction but modified her sentence to life imprisonment with the possibility of parole.  *See Moore v. State*, No. F-2006-63 (Okla. Crim. App.).

In September of 2008, Petitioner filed a pro se application for postconviction relief.  The state trial court denied the application, and the OCCA dismissed Petitioner's appeal of that disposition for lack of jurisdiction.  *See* Second Am. Pet. (Doc. No. 226) at 2-4.

---

[2] The state-court dockets cited herein are publicly available through http://www.oscn.net.

Petitioner filed the instant habeas action on September 4, 2009. An attorney was appointed to represent Petitioner in July of 2010. Respondent challenged the timeliness of Petitioner's habeas application. The Court held that Petitioner was entitled to review of the merits of her constitutional claims because she "had made a . . . showing of the probability of actual innocence sufficient to permit her case to overcome the limitations bar." Order of Oct. 28, 2011 (Cauthron, J.) at 2-4 (Doc. No. 139) (adopting Proposed Findings of Fact and Conclusions of Law of Sept. 7, 2011 ("Proposed FFCL," Bacharach, Mag. J.) (Doc. No. 135)). *See generally Schlup v. Delo*, 513 U.S. 298, 313-29 (1995).

Respondent further argued that Petitioner had failed to exhaust available state-court remedies as required by 28 U.S.C. § 2254(b). *See* Limited Answer (Doc. No. 159) at 1-14. The Court determined that in light of various factors, including "the substantial newfound evidence developed in federal court regarding the Petitioner's actual innocence," "the state courts should be given an opportunity to address this matter in the first instance." Order of Apr. 6, 2012 (Cauthron, J.) at 2 (Doc. No. 182). The Court therefore stayed proceedings in this matter pending Petitioner's exhaustion of her claims in the state courts. *See id.* at 3.

On June 5, 2012, Petitioner filed a second application for postconviction relief in the state trial court. *See* Pet'r's Notice (Doc. No. 195) at 1. The application raised six propositions of error: (1) ineffective assistance of trial counsel for (a) failure to fully investigate the cause of death of A.S. and the timing of injuries to A.S. alleged to have been caused by Petitioner, and (b) failure to present testimony from expert witnesses as to the cause and timing of the fatal injuries; (2) ineffective assistance of trial counsel due to trial counsel suffering from conflicts of interest; (3) deprivation of due process due to the State's

3

failure to disclose exculpatory evidence; (4) ineffective assistance of appellate counsel due to failure to argue ineffective assistance of trial counsel as to the lack of investigation of medical issues and lack of presentation of medical testimony; (5) ineffective assistance of appellate counsel arising from the failure to uncover the conflicts of interest of trial counsel and raise a corresponding claim of ineffective assistance of trial counsel; and (6) ineffective assistance of appellate counsel due to failure to uncover and seek relief on the State's violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   *See* Pet'r's Second Appl. Postconviction Relief (Doc. No. 234-7) at 2-8.

The trial court rejected the State's assertion of procedural bar, and, by agreement of the parties, bifurcated its determination of Petitioner's postconviction claims into two parts. The trial court would first consider whether defense counsel rendered deficient performance or labored under a conflict of interest.  If the trial court found that defense counsel's performance was deficient or subject to a conflict of interest, the trial court would then separately consider whether that performance had resulted in prejudice to Petitioner, as well as Petitioner's *Brady* claim and ineffective assistance of appellate counsel claims. *See* J. Statement of Proc. Hist. (Doc. No. 234-9) at 8.

Regarding the first determination, the trial court conducted an evidentiary hearing on various dates between December 2014 and August 2015.  *See id.* at 9.  The state-court docket reflects that the complete hearing transcript was filed in August 2016, and each party submitted proposed findings of fact and conclusions of law to the trial court on January 17, 2017.  *See State v. Moore*, No. CF-2004-351 (Okla. Cnty. Dist. Ct.).

4

On March 23, 2018, Petitioner filed a Motion to Lift Stay (Doc. No. 213) in this Court, arguing that the exhaustion requirement should be excused and that federal habeas proceedings should resume due to both exceptional circumstances and the "ongoing and lengthy delays in state court proceedings." *Id.* at 6. Four days later, the state trial court issued an order denying relief on Petitioner's Second Application for Postconviction Relief. *See* Trial Ct. Order of Mar. 27, 2018 (Doc. No. 227-2). Petitioner appealed the denial to the OCCA. The appellate court did not address the merits of Petitioner's claims but affirmed on the basis that Petitioner's claims were procedurally barred. *See* OCCA Order of Oct. 12, 2018 (Doc. No. 227-1), *Moore v. State*, No. PC-2018-403 (Okla. Crim. App.).

This Court then lifted the stay that had been imposed in this matter and permitted Petitioner to file an amended pleading. On April 19, 2019, Petitioner filed the verified Second Amended Petition. Petitioner presents six grounds for relief, urging the same propositions of error as were argued to the state courts in her Second Application for Postconviction Relief. *See* Second Am. Pet. at 7-14. In Ground One, Petitioner argues that she was deprived of her Sixth Amendment right to effective assistance of trial counsel based upon counsel's: "a) failure to fully investigate the cause of death and the timing of injuries attribute[d] to Petitioner, including the failure to timely consult with and retain expert witnesses, and b) failure to present testimony from the expert witnesses as to the cause and timing of the fatal injuries." *Id.* at 7. According to Petitioner, "Trial Counsel was aware that there were reasons to question the cause and timing of the child's death but failed to reasonably investigate those issues, failed to timely consult with and retain

appropriate experts[,] and failed to present expert testimony at trial, which resulted in Petitioner's conviction." *Id.*; *see also* Pet'r's Br. at 55-72.

Respondent initially responded to the Second Amended Petition by asserting that Petitioner's claims were unexhausted, untimely, or procedurally barred. *See* Initial Answer (Doc. No. 234) at 39-117; 28 U.S.C. §§ 2244(d), 2254(b). Rejecting these arguments, Judge Purcell recommended that Petitioner's claims be permitted to proceed on their merits due to Petitioner having made a sufficient showing of actual innocence. *See* R. & R. of Dec. 12, 2019, at 9-10, 16-21. Neither party objected to this aspect of the R. & R., which was accepted and adopted by the undersigned. *See* Order of May 14, 2020 (Goodwin, J.) at 2-3 (Doc. No. 248); *see also id.* at 3 n.2.

Judge Purcell also recommended, and the Court agreed, that Respondent be permitted to file an answer addressing the merits of the federal habeas claims presented in the Second Amended Petition. *See id.* at 5. Respondent then filed an Answer (Doc. No. 250), and Petitioner filed a Reply (Doc. No. 254). Upon due consideration, Judge Purcell issued the Supplemental R. & R. (Doc. No. 261) now under review. In his 90-page Supplemental R. & R., Judge Purcell provided background information and procedural history for the matter. *See id.* at 1-18. Judge Purcell then addressed Ground One of the Second Amended Petition in detail, ultimately finding that Petitioner had shown a deprivation of her right to effective assistance of trial counsel and recommending that the petition be granted on that basis. *See id.* at 18-90.

DISCUSSION

A state prisoner may seek federal habeas relief "on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A petitioner who otherwise establishes a right to habeas relief must also show that "law and justice require" such relief from the federal court.  28 U.S.C. § 2243; *see Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022).  Here, Petitioner contends—and Judge Purcell in the Supplemental R. & R. found—that the attorneys representing Petitioner in the state-court trial that resulted in her conviction did not provide her the effective assistance of counsel guaranteed by the Sixth Amendment (the "IATC claim" or "Ground One").

The Sixth Amendment prescribes: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

> Without counsel the right to a fair trial itself would be of little consequence, for it is through counsel that the accused secures his other rights.  The constitutional guarantee of counsel, however, cannot be satisfied by mere formal appointment.  An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.  In other words, the right to counsel is the right to effective assistance of counsel.

*Id.* at 377 (citations and internal quotation marks omitted); *accord Smith v. Mullin*, 379 F.3d 919, 929 (10th Cir. 2004).

The Tenth Circuit has instructed that "[t]he gravity of a claim of ineffective assistance of counsel cannot be overstated." *Smith*, 379 F.3d at 929. The purpose of the Sixth Amendment's requirement of effective assistance is "to ensure a fair trial." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374; *accord Strickland*, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

Pursuant to governing authority, the Court determines de novo any part of the proposed findings and recommended disposition to which proper objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having conducted a de novo review of the objections made by Respondent to the Supplemental R. & R., and applying the standards and limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court modifies

the findings and conclusions recommended by Judge Purcell to the limited extent set forth below and agrees that the Second Amended Petition should be conditionally granted.

I.  Relevant Limitations and Standards for Federal Court Review Under AEDPA

    *A.  AEDPA's Exhaustion and Timeliness Requirements*

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  "Sections 2254(b) and (c) provide that a federal court may not grant such applications unless, with certain exceptions, the applicant has exhausted state remedies."  *Id.*  And 28 U.S.C. § 2244(d) imposes a one-year statute of limitations on petitions for federal habeas relief by state prisoners.  *See* 28 U.S.C. § 2244(d)(1).

As noted, this Court already has found that Petitioner is entitled to review of the merits of her constitutional claims because she "ha[s] made a . . . showing of the probability of actual innocence sufficient to permit her case to overcome the limitations bar."  Order of Oct. 28, 2011, at 2; *accord* Order of May 14, 2020, at 2-3, 3 n.2; *see Schlup*, 513 U.S. at 313-29; *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.").  Accordingly, the Court's review is not proscribed by application of § 2254(b) and (c) or § 2244(d).[3]

---

[3] Respondent's Objection challenges the Court's prior finding "for appellate purposes."  Resp't's Obj. (Doc. No. 264) at 104-06.  Petitioner responds that "Respondent has waived any argument as to the finding of actual innocence for appellate purposes."  Pet'r's Resp. (Doc. No. 267) at 31-34.  This Court need not and does not address this waiver issue.

B.  *The Inapplicability of 28 U.S.C. § 2254(d)*

Pursuant to 28 U.S.C. § 2254(d), the "additional restriction" of a "highly deferential standard" applies if a habeas corpus petition "includes a claim that has been 'adjudicated on the merits in State court proceedings.'"  *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)).  In determining whether there has been such an adjudication, the federal court should look to "the last related state-court decision that . . . provide[s] a relevant rationale" for that court's disposition of the claim.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192-94 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)); *accord Hawes v. Pacheco*, 7 F.4th 1252, 1261 n.6 (10th Cir. 2021) (explaining that the habeas court looks to the "last reasoned opinion" of the state court on the petitioner's federal claims (internal quotation marks omitted)).

As noted above, although the state trial court issued findings and conclusions in denying the Second Application for Postconviction Relief, the OCCA did not reach the merits of Petitioner's claims on appeal, instead expressly rejecting the application on procedural grounds.  *See* OCCA Order of Oct. 12, 2018, at 9 ("Petitioner's propositions of error . . . are thus barred or waived.").  In their pleadings, the parties agreed that this disposition, the "last reasoned opinion" of the state courts, does not implicate review under § 2254(d).  *See* Pet'r's Br. at 34-35; Answer at 36, 38, 54.  Judge Purcell found likewise, explaining that because the claims were not "adjudicated on the merits," but instead resolved by the OCCA on procedural grounds, "§ 2254(d)'s deference does not apply."  28 U.S.C. § 2254(d); Suppl. R. & R. at 19.

Neither party now argues otherwise, and the Court concurs with the Supplemental R. & R. on this point. The OCCA's affirmance of the trial court's decision "on alternative procedural grounds" was the "last reasoned decision" but was "not . . . a decision resulting from [a] merits adjudication." *Greene v. Fisher*, 565 U.S. 34, 40 (2011) (emphasis omitted); *Ylst*, 501 U.S. at 804; *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013); *Williams v. Alabama*, 791 F.3d 1267, 1271-72, 1273-76 (11th Cir. 2015). Because the OCCA did not reach the merits of Petitioner's Second Application for Postconviction Relief, there is no state-court decision to defer to when considering the merits of Petitioner's federal claims.

### C. The Presumption of Correctness Under 28 U.S.C. § 2254(e)(1)

The lack of a state-court § 2254(d) merits adjudication is not by itself determinative of the federal habeas court's application of § 2254(e)(1), which provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

> "Clear and convincing" is "an intermediate standard of proof," *Santosky v. Kramer*, 455 U.S. 745, 756 (1982), satisfied by evidence that would "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions [is] 'highly probable,'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting C. McCormick, Law of Evidence § 320, p. 679 (1954)).

*Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (parallel citations omitted).

Before the magistrate judge, the parties disagreed as to whether § 2254(e)(1)'s presumption of correctness should be applied to the factual findings made by the state trial

court in denying the Second Application for Postconviction Relief.  *Compare* Pet'r's Br. at 40, *and* Pet'r's Reply at 7-16, *with* Answer at 18, 37-38, 52-62.  Judge Purcell found that there was a lack of authority directly on point but nevertheless assumed that the presumption would apply and proceeded to consider Petitioner's Ground One subject to that express assumption.  *See* Suppl. R. & R. at 19-21.

Petitioner did not file a written objection to the Supplemental R. & R.  Thus, although she continues to contend that the statutory presumption should not apply, *see* Pet'r's Resp. at 10, she has not presented an actionable challenge to Judge Purcell's approach.  For her part, Respondent faults the manner in which the magistrate judge applied the § 2254(e)(1) presumption of correctness, but she likewise does not object to the underlying application of that presumption to the state trial court's factual determinations.  *See* Resp't's Obj. at 14-15, 31.[4]

Accordingly, the undersigned accepts that the state trial court's "findings of fact that bear upon [Ground One] are entitled to a presumption of correctness rebuttable only by clear and convincing evidence" under 28 U.S.C. § 2254(e)(1).  *Grant*, 886 F.3d at 889 (internal quotation marks omitted).

---

[4] Judge Purcell's approach appears consistent with both the statutory language and relevant authority.  *See* 28 U.S.C. § 2254(e)(1) (prescribing that a state-court factual determination "*shall* be presumed to be correct" (emphasis added)); *see, e.g.*, *Fontenot*, 4 F.4th at 1061 ("Even when reviewing a habeas claim de novo rather than under § 2254(d), state-court factfinding still receives the benefit of doubt under § 2254(e)(1) . . . ."); *Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (explaining that the presumption applies "even in the setting where we lack a state court merits determination").

### D.  Summary of Petitioner's Burden

In sum, because the Court is not bound by 28 U.S.C. § 2254(d) deference, it reviews Petitioner's Ground One de novo.  *See Fontenot*, 4 F.4th at 1061; *Hooks v. Workman*, 689 F.3d 1148, 1194 (10th Cir. 2012).  Petitioner "bear[s] the burden of showing a right to habeas relief based on a preponderance of the evidence." *Menzies v. Powell*, 52 F.4th 1178, 1210 (10th Cir. 2022), *petition for cert. filed*, No. 22-7482 (U.S. May 8, 2023).  That is, Petitioner must show by a preponderance of the evidence that her representation at trial was constitutionally ineffective.  *See id.*  "A preponderance of the evidence is evidence sufficient to persuade the court that a fact is more likely present than not present." *United States v. King*, No. CR-13-63-F, 2014 WL 12623415, at \*6 (W.D. Okla. Dec. 1, 2014); *accord Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Further, because 28 U.S.C. § 2254(e)(1) is assumed to apply, the Court in conducting its de novo review of Ground One extends to all material state-court factual findings the presumption of correctness directed by that provision.  To the extent Petitioner challenges any such finding she must rebut that presumption by clear and convincing evidence.  *See Grant*, 886 F.3d at 889.[5]

---

[5] The state court's legal conclusions or mixed findings of law and fact are not entitled to AEDPA's presumption of correctness, however.  *See Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003).

II.    Review of the Supplemental Report and Recommendation

    *A. Respondent's General Objections*

        1.   <u>The "Background Information" Section</u>

The Supplemental R. & R. opens with a short section titled "Background Information," wherein Judge Purcell summarizes the circumstances of A.S.'s death, details Petitioner's judicial proceedings and events involving her defense counsel, and identifies Petitioner's habeas claims.  *See* Suppl. R. & R. at 1-6.  Respondent objects that this portion of the Supplemental R. & R. is improper for several reasons, including: its failure to include a record citation for every proposition, its inclusion of certain items presented to the magistrate judge by Petitioner and exclusion of certain other items presented by Respondent, its alleged disregard of presumptively correct state-court factual findings, and its making of "new findings totally unsupported by the record."  Resp't's Obj. at 15-30.  Respondent contends that the deficiencies of the Background Information section render the entire Supplemental R. & R. unreliable, as this section "sets the stage" for Judge Purcell's erroneous conclusion as to Petitioner's ineffective-assistance claim.  *Id.* at 15-16.

    The Court readily concludes that the "Background Information" section serves as an introduction of the parties' controversy and not an exhaustive cataloging of all evidence considered and all facts found in the analysis of Petitioner's habeas claims.  *See* Pet'r's Resp. at 8.  Respondent does not establish that the general recounting of the case history, or a lack of citations therein, undermines the remainder of the analysis of the Supplemental R. & R.  The Court also notes that this portion of the Supplemental R. & R. presents much of the same "Factual Background" as did a previous R. & R., to which Respondent did not

object.  *See* R. & R. of Dec. 12, 2019, at 2-4, 3 n.1.  To the extent Respondent raises specific objections to particular aspects of the Background Information section, *see* Resp't's Obj. at 23-30, the undersigned will address those objections in connection with the relevant analysis of Ground One, as applicable.

## 2. Discussion of the Trial Court's Factfinding Process

Following the evidentiary hearing on Petitioner's Second Application for Postconviction Relief, both parties submitted written proposed findings of fact and conclusions of law to the trial court.  The trial court incorporated the State's proposed narrative discussion, findings of fact, and conclusions of law nearly verbatim into its order denying relief.  *See id.* at 31.  *Compare* Trial Ct. Order of Mar. 27, 2018, at 7-30, *with* State's Proposed Order (Doc. No. 227-3) at 3-25.

In the Supplemental R. & R., Judge Purcell noted the trial court's wholesale adoption of the State's proposed findings of fact and cited several judicial decisions criticizing the practice by courts of "verbatim adoption" and "uncritical[] accept[ance]" of findings of fact "prepared without judicial guidance" "by prevailing parties."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 572 (1985); *see* Suppl. R. & R. at 21-23.

According to Respondent, the Supplemental R. & R.'s recognition of the context of the trial court's ruling necessarily establishes that Judge Purcell was improperly applying pre-AEDPA law and did not actually presume the trial court's factual findings were correct as prescribed by 28 U.S.C. § 2254(e)(1).  *See* Resp't's Obj. at 31-42.  Respondent objects that *how* the trial court reached its disposition is "irrelevant" and that consideration of the circumstances underlying the trial court's order is not authorized by the current AEDPA

statutory scheme.  *Id.* at 31-39.[6]  In support, Respondent focuses upon the fact that decisions cited by the magistrate judge as disapproving of courts' verbatim adoption of prevailing parties' findings were issued prior to AEDPA's enactment or occurred in a different class of cases.  *See id.* at 34-39.  Respondent also relies on *Sharpe v. Bell*, wherein the Fourth Circuit explained that "AEDPA does not make deference to state court fact-finding dependent on the adequacy of the procedures followed by the state court."  *Sharpe*, 593 F.3d 372, 378 (4th Cir. 2010); *see* Resp't's Obj. at 36-42.

Respondent's objection misreads the Supplemental R. and R.  Judge Purcell expressly stated that he was applying the § 2254(e)(1) presumption of correctness to the state court's decision.  *See, e.g.*, Suppl. R. & R. at 21, 23-24.  While the magistrate judge criticized the trial court's verbatim adoption of findings submitted by the State, he specified that he examined the provenance of the trial court's order only as "context."  *Id.* at 23-24 (emphasizing that the trial court's adoption of the State's findings does not affect application of § 2254(e)(1)).  To the extent Respondent suggests that Judge Purcell deviated from the § 2254(e)(1) standard, Respondent has not shown that to be the case.

Nor has Respondent demonstrated that Judge Purcell otherwise erred in addressing the circumstances underlying the issuance of the state court's determination.  A federal habeas court is required to apply a presumption of correctness to the state court's factual determinations.  This requirement does not preclude that court from considering how those

---

[6] Prior to the 1996 enactment of AEDPA, a statutory presumption of correctness applied to state-court findings of fact but was subject to eight enumerated exceptions.  *See Jefferson v. Upton*, 560 U.S. 284, 290-291 (2010) (citing 28 U.S.C. § 2254(d)(1)-(8) (1966)).

findings were reached, however.  "[T]he character of the process upon which the state court based its conclusion may have some bearing on whether a petitioner's showing amounts to 'clear and convincing' evidence that the state court erred." *Sharpe*, 593 F.3d at 378; *accord Lambert v. Blackwell*, 387 F.3d 210, 239 (10th Cir. 2004) ("[T]he extent to which a state court provides a full and fair hearing . . . might be a consideration while applying deference under . . . § 2254(e)(1)." (internal quotation marks omitted)).

> [P]rocedure often *affects* substance—that is, the procedural process through which a court makes a substantive determination influences the reasonableness of the substantive determination itself.
>
> We consequently have little trouble concluding the procedures a state court employs to make factual determinations . . . can affect the reasonableness of the court's subsequent factual determinations.

*Smith v. Aldridge*, 904 F.3d 874, 882 (10th Cir. 2018) (citation omitted) (discussing the "unreasonable determination" standard under 28 U.S.C. § 2254(d)(2)).

Respondent therefore does not show that the Supplemental R. & R.'s consideration of the "character of the process" undermines or is inconsistent with employment of the statutory presumption of correctness set forth by § 2254(e)(1).  *Sharpe*, 593 F.3d at 378.

### 3.   Application of the Presumption of Correctness to Implicit Findings

In its order denying Petitioner's Second Application for Postconviction Relief, the trial court first identified the materials it had reviewed and presented a procedural history of the case.  *See* Trial Ct. Order of Mar. 27, 2018, at 1-7.[7]  There is then a discussion (the

---

[7] This Procedural History was a joint stipulation submitted by the parties at the close of the evidentiary hearing.  *See* Trial Ct. Order of Mar. 27, 2018, at 2; Postconviction Hr'g Tr. of Aug. 4, 2015, at 27-28 (conventionally filed).

"Narrative" section) of Petitioner's IATC claim, *id.* at 7-27, followed by a "Conclusion" section that sets forth 18 "specific findings of fact and conclusions of law" and denies relief on the IATC claim.  *Id.* at 27-30.[8]  In the Supplemental R. & R., Judge Purcell discussed the case and § 2254(e)(1) generally and then stated: "In its order the state court set forth eighteen findings of fact, preceded by a narrative of supportive reasoning.  The Court will address only those factual findings most relevant to Petitioner's grounds for relief addressed therein."  Suppl. R. & R. at 24 (citation omitted).

Citing *Register v. Thaler*, 681 F.3d 623 (5th Cir. 2012), Respondent argues that "'the presumption of correctness in § 2254(e)(1) applies both to explicit findings and to unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'"  Resp't's Obj. at 43 (alterations omitted) (quoting *Register*, 681 F.3d at 629).[9] Respondent objects that the magistrate judge erred by applying the statutory presumption to the enumerated findings in the trial court's "Conclusion" section but failing to apply that presumption to factual findings made by the trial court in the preceding "Narrative" section. *See* Resp't's Obj. at 43.

The Court sees nothing in the magistrate judge's treatment of these two sections that would amount to a failure to properly apply § 2254(e)(1) to any factual finding implied in

---

[8] Although Petitioner's claims for ineffective assistance of appellate counsel were reserved and not addressed at the postconviction hearing, the trial court denied relief as to certain of those claims as well.  *See* Trial Ct. Order of Mar. 27, 2018, at 26-27, 30.

[9] Tenth Circuit authority likewise supports the extension of the statutory presumption to implicit factual findings made by state courts.  *See, e.g.*, *Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

the "Narrative" section of the trial court's order.  A more natural reading of the Supplemental R. & R. reflects that Judge Purcell simply chose to focus his discussion upon the findings and conclusions that Judge Purcell considered germane to Ground One.  *See, e.g.*, Suppl. R. & R. at 17 (referring generally to the trial court's order as "its findings of fact and conclusions of law"), 21-22 (citing the "Narrative" section).  Further, Respondent does not identify any specific factual finding from the "Narrative" section, as opposed to the "Conclusion" section, to which Judge Purcell allegedly failed to accord the presumption of correctness.  *See* Resp't's Obj. at 43.

4. Summary

In sum, Respondent has not shown any error that generally tainted the magistrate judge's consideration of the state court's factual findings or resulted in a failure to properly apply § 2254(e)(1).  To the extent Respondent raises specific, material objection to the facts underlying the magistrate judge's recommendation, the undersigned will address those objections below.

B. *Discussion of the Magistrate Judge's Review of Specific Factual Findings by the State Trial Court*

1. Misappropriation of Defense Funds

After being criminally charged in January 2004, Petitioner was initially represented by a public defender named Jennifer Richard.  In February 2005, Petitioner, through her mother, retained attorneys Isaac Funderburk and David Slane to replace Ms. Richard.  Mr. Funderburk and Mr. Slane entered their appearances in the state court on February 10,

2005.  Attorney Eric Reynolds joined the defense team shortly before the trial, which was conducted September 12-16, 2005.

Petitioner alleges that Mr. Funderburk, who was her contact on the defense team and handled the financial aspect of her representation, "was distracted from attending to her case and using funds she provided for experts for his own personal expenses" or for purposes "other than for their intended use."  Second Am. Pet. at 9.  The state trial court found in relevant part: "While the evidence presented to this Court supports that Mr. Funderburk did not provide an adequate accounting for Petitioner's client-trust fund, there has been no evidence to support Petitioner's allegation that Mr. Funderburk misappropriated those funds for his own benefit."  Trial Ct. Order of Mar. 27, 2018, at 30; *see also id.* at 24-26.

The magistrate judge considered this finding in detail, reviewing the postconviction hearing testimony and record to conclude that Petitioner had rebutted the presumption of correctness:

> [S]erious questions exist as to the propriety of Mr. Funderburk's handling of the funds provided to him for Petitioner's defense.  Petitioner has certainly presented clear and convincing evidence to rebut the state court finding that "there *has been no evidence to support* Petitioner's allegation that Mr. Funderburk misappropriated Defense Funds for his own benefit."  Most significant to the present case, however, it is clear funds available to the defense for expert witnesses were not used for that purpose.

Suppl. R. & R. at 28-29 (alteration and citation omitted).

Respondent raises no objection to this aspect of the Supplemental R. & R., and the Court concurs with Judge Purcell's conclusion.  *See id.* at 24-29.

2.  <u>Mr. Funderburk's Substance Abuse Issues</u>

In connection with her ineffective-assistance claims, Petitioner alleges that Mr. Funderburk was dealing with serious "personal and financial difficulties" prior to and during the September 2005 criminal trial, including substance abuse.  Second Am. Pet. at 9; *see also* Pet'r's Br. at 79-81.  Whether and to what extent Mr. Funderburk was impaired in his representation of Petitioner due to his drug and alcohol issues[10] was addressed in depth during the state court's evidentiary hearing.  *See* Trial Ct. Order of Mar. 27, 2018, at 21-24.  The trial court ultimately found:

> There has been no evidence presented that Mr. Funderburk was impaired or under the influence of intoxicating substances at the time he represented Petitioner in this matter.  On the contrary, witness testimony supports that Mr. Funderburk was functioning normally throughout the course of his representation.

*Id.* at 29-30 ("Factual Finding No. 12").

In the Supplemental R. & R., Judge Purcell discussed in detail the relevant evidence and testimony in the record.  This included evidence reflecting that, between February and September 2005, Mr. Funderburk had engaged in behaviors opined to be consistent with the abuse of prescription drugs and that, during the same period, he experienced significant financial and personal troubles, including an ongoing prosecution against him by the Oklahoma County District Attorney's Office for drug- and alcohol-related criminal

---

[10] It is undisputed that, prior to practicing law in Oklahoma, Mr. Funderburk served three years in federal prison after pleading guilty to two criminal counts, including a felony drug conspiracy charge.  In January 2010, Mr. Funderburk died as a result of an accidental drug overdose.

charges.  *See* Suppl. R. & R. at 29-32.[11]  Judge Purcell ultimately concluded that, despite the trial court's finding of "no evidence" of impairment or intoxication, "[t]here is evidence suggesting [Mr. Funderburk's struggle with substance abuse problems] also occurred during Mr. Funderburk's representation of Petitioner" and that "[w]hether and/or to what extent these issues affected his representation of Petitioner is unclear."  *Id.* at 5-6.

> It appears an exceedingly reasonable conclusion that Mr. Funderburk was abusing prescription medications during his representation of Petitioner.  The parties have presented conflicting evidence regarding whether it affected his performance *during trial*. . . . .
>
> Regardless, it is not necessary for the Court to make a specific determination as to whether Petitioner met her burden in rebutting the state court's finding that no evidence was presented indicating Mr. Funderburk's performance was impaired during his representation of Petitioner.  While Mr. Funderburk's use, and likely abuse, of prescription medication during his representation of Petitioner may provide context for various issues raised herein, the Court's finding that Petitioner received ineffective assistance of counsel is not dependent upon the same.

*Id.* at 31-32 (citation omitted).

Respondent asserts that this approach "makes a mockery of" 28 U.S.C. § 2254(e)(1), as the magistrate judge found that Mr. Funderburk was likely abusing prescription medication without directly concluding that the presumption of correctness owed to the state court's arguably incompatible factual finding had been rebutted.  Resp't's Obj. at 44-45; *see also id.* at 28 & n.17.  Respondent, somewhat inconsistently, also objects that the magistrate judge erred in applying § 2254(e)(1) because the burden was placed on Respondent to justify the state court's finding rather than on Petitioner to rebut the

---

[11] Mr. Funderburk pleaded guilty to those charges on November 4, 2005.  *See State v. Funderburk*, No. CF-2003-6954 (Okla. Cnty. Dist. Ct.).

associated presumption. *See id.* at 45-46. Petitioner responds that Judge Purcell's comments on this point are "clearly dicta" and so these objections are "not relevant." Pet'r's Resp. at 7 n.1.

It would not have been proper for the magistrate judge to rely upon his own finding as to Mr. Funderburk's likely substance abuse without first deciding that the § 2254(e)(1) presumption had been in relevant part rebutted. *Cf. Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("[T]he correct standard of review under AEDPA is not waivable."). Reading this portion of the Supplemental R. & R. in context, however, reflects that Judge Purcell's statements regarding Mr. Funderburk's substance-abuse issues are "unnecessary to the decision in the case" and therefore dicta. *Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, 10 F.4th 1016, 1052 (10th Cir. 2021) (internal quotation marks omitted). Judge Purcell's analysis of the IATC claim does not further reference these issues, but instead focuses upon the ultimate strategic decisions made by defense counsel with respect to causation and expert witnesses. The objection is therefore overruled.[12]

### 3. Consultation with a Second Expert

At the postconviction hearing, Petitioner's defense attorney David Slane testified that, in addition to a female forensic pathologist named Dr. Corrie May (discussed *infra*), the defense team had consulted with a second doctor, who was male, and decided not to retain him for trial. *See* Postconviction Hr'g Tr. of Dec. 4, 2014, at 26-29, 47. Citing this testimony, the state trial court found:

---

[12] Consistent with this view, this Court accords the trial court's Factual Finding No. 12 the presumption of correctness owed it under § 2254(e)(1).

> The defense did consult with two "mainstream" medical experts, Dr. Corrie May and an unnamed male doctor, prior to Petitioner's trial. Both doctors indicated they would be harmful to Petitioner's defense.

Trial Ct. Order of Mar. 27, 2018, at 28 ("Factual Finding No. 4"); *see also id.* at 13.

Petitioner has argued in this proceeding that the state trial court's determination that defense counsel consulted with any doctor other than Dr. May should be rejected. *See* Pet'r's Br. at 43-45; Pet'r's Resp. at 21-27. In the Supplemental R. and R., Judge Purcell agreed with Petitioner, finding that Petitioner had rebutted the presumption of correctness owed under § 2254(e)(1). *See* Suppl. R. & R. at 32-40. In support, Judge Purcell contrasted Mr. Slane's "vague" and uncorroborated testimony about the unknown male expert with record evidence that Judge Purcell considered to "undermine or outright contradict" that testimony. *Id.* at 35. Respondent objects to this aspect of the Supplemental R. & R.

First, Respondent argues that the magistrate judge "improperly reweigh[ed]" credibility determinations made by the state trial court regarding Mr. Slane's testimony at the postconviction hearing, suggesting that the federal court may not reject any aspect of that testimony in conducting its habeas review. *See* Resp't's Obj. at 51-53, 54-68. The undersigned agrees that in reaching Factual Finding No. 4, the state trial court "validated [Mr. Slane's] testimony both expressly and implicitly," finding that this aspect of the attorney's testimony was credible. *Ellis*, 872 F.3d at 1071 n.2. This credibility finding is "one[] of fact." *Id.*

The presence of a credibility determination does not, however, preclude the Court from considering whether the § 2254(e)(1) presumption has been rebutted or from making a finding that it has. As prescribed by the Supreme Court, "[a] federal court can disagree

with a state court's credibility determination and, when guided by AEDPA, conclude . . . that the factual premise was incorrect by clear and convincing evidence." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Here, the magistrate judge's rejection of the relevant aspect of the state trial court's Factual Finding No. 4 (the determination that defense counsel consulted with a doctor other than Dr. May) is not based on a wholesale rejection of the credibility of Mr. Slane's testimony.[13]  As explained by the magistrate judge,

> Mr. Slane acknowledged that his memory regarding Petitioner's case was not
> entirely reliable at the time of the evidentiary hearing as it had been ten years
> since Petitioner's trial.  Moreover, Mr. Slane no longer possessed a file from
> Petitioner's case or any of his notes.  By 2015, when Mr. Slane testified in
> this matter, he had practiced twenty-one years, represented thousands of
> defendants, tried hundreds of cases, and noted that his cases ran together in
> his memory. . . . .  Indeed, Petitioner's own evidentiary hearing expert,
> criminal defense attorney Robert Wyatt, stated that he could not remember
> every expert he had hired over the years without consulting a case file.

Suppl. R. & R. at 34 (citing Postconviction Hr'g Tr. of Dec. 4, 2014, at 7, 24, 27; Postconviction Hr'g Tr. of Mar. 19, 2015, at 144-45); *see also Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (finding that statements provided by defense counsel during postconviction proceedings more than four years after sentencing "may simply reflect a mistaken memory shaped by the passage of time").

On the broader point of whether the relevant aspect of the state trial court's Factual Finding No. 4 has been shown to be incorrect by clear and convincing evidence,

---

[13] Respondent implies that the Court would be endorsing perjured evidence by looking to other witnesses' differing recollections of events.  *See* Resp't's Obj. at 52 (arguing that Petitioner and her mother had an "incentive to offer false testimony" regarding the consultation with a second expert).  The undersigned has found no indication in the record that any witness—be it Petitioner, a family member, or the defense attorneys whose own performance was being challenged—deliberately testified falsely at the hearing.

Respondent argues that the magistrate judge improperly burdened Respondent with defending the state court's factual finding by "pick[ing] apart" Respondent's evidence and by concluding that the 28 U.S.C. § 2254(e)(1) presumption had been rebutted without identifying evidence that directly "contradict[s]" Mr. Slane's account. Resp't's Obj. at 46-51. The undersigned disagrees.

On the first point, the Supplemental R. & R.'s discussion of the evidence is presented within the framework of determining whether Petitioner had met her burden under § 2254(e)(1). *See* Suppl. R. & R. at 32-33, 40. An examination of whether the record evidence is consistent with the trial court's finding is not "picking apart" Respondent's arguments but rather a proper aspect of that determination. *See, e.g.*, *Wiggins*, 539 U.S. at 528-29, 534 (considering the case record to hold that the state appellate court's underlying factual assumption had been shown to be incorrect by clear and convincing evidence); *cf. Colorado*, 467 U.S. at 316 (noting that the judging of proof by a clear and convincing standard requires "weigh[ing]" the opposing parties' materials on "the evidentiary scales").

Further, Respondent's insistence that Petitioner can rebut the statutory presumption of correctness only by identifying an item of evidence that wholly contradicts Mr. Slane's imprecise testimony and renders it "entirely unreliable" is misguided. Resp't's Obj. at 47-50, 66 (emphasis omitted). As noted above, "clear and convincing" is an "intermediate" standard, calling for proof that the truth of the contention is "highly probable." *Fontenot*, 4 F.4th at 1018. "'Highly probable' is a standard that requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258-59 (11th Cir. 2013) (internal quotation marks omitted). "In the §

2254(e)(1) context, this standard 'is demanding but not insatiable.'" *Fontenot*, 4 F.4th at 1018 (quoting *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)).[14]

Having considered the relevant record, the undersigned concurs that Petitioner's rebuttal burden has been met. As noted in the Supplemental R. & R., Mr. Slane's testimony regarding the consultation with a second expert was qualified by uncertainty:

> Mr. Slane testified that he, along with Mr. Funderburk, spoke with two doctors regarding Petitioner's case, a male expert and Dr. May. He testified that they first spoke with a male doctor "that we sent the information to." Tr. Dec. 4, 2014 Vol. I at 26. He thinks the male doctor was a forensic pathologist. *Id.* at 26, 85. Mr. Slane testified that he cannot recall this male doctor's name, when they spoke with him, where he resided other than it was not in Oklahoma, []or when they received his opinion. *Id.* at 26, 29, 85-86. Indeed, the only things he can recall are that the male expert charged them a fee for his services and that the expert's opinion would have been harmful to their case.

> There are three amounts Mr. Slane believes they paid to doctors - $1,000.00, $2,000.00, and $5,000.00. *Id.* at 27. "I don't remember who got what and when. But I thought that we had sent a packet to a male doctor and asked him to review the information to see if he could help us. And we got a pretty quick response back from him." *Id.* Mr. Slane later testified he thought they paid the unknown male doctor $1,000.00 to review their materials. *Id.* at 84-85. Mr. Slane indicated they later spoke with the male doctor on the speakerphone in Mr. Slane's office. *Id.* at 27-28, 85-86. The doctor informed them that he would be harmful to their case and therefore, they did not speak with him further. *Id.*

Suppl. R. & R. at 34-35 (footnote omitted). Mr. Slane further testified that he did not recall whether the second doctor's practice was "mainstream" in nature (as was found by the trial

---

[14] To the extent the magistrate judge concluded that Petitioner's evidence contradicts Mr. Slane's testimony outright, the undersigned disagrees. While not determinative for the reasons set forth above, Petitioner does not identify any item of evidence that *directly* refutes Mr. Slane's contention that a second expert was consulted.

court in Factual Finding No. 4).  Postconviction Hr'g Tr. of Dec. 4, 2014, at 47, 86 ("[I]t

was a doctor that [Mr. Funderburk] was aware of.").

Petitioner directs the Court to numerous items of evidence that are not in accord

with Mr. Slane's recollection of events and therefore undermine the disputed state-court

finding.  These include:

- At the postconviction hearing, Mr. Slane was questioned regarding an affidavit that he had given and signed.  *See* Slane Aff. of Sept. 4, 2012 (Ex. G, State's Resp. to Pet'r's Second Appl. Postconviction Relief (Postconviction R. at 2380-83)) (conventionally filed).  The affidavit provides details as to the attorneys' contact with Dr. May, and other facts regarding their representation of Petitioner, but does not reference consulting with or wanting to hire a second expert.  *See id.*  Mr. Slane "do[es] [not] know" why there is no mention of a second expert in the affidavit. Postconviction Hr'g Tr. of Dec. 4, 2014, at 84-85, 88-89, 113-15.

- Although Mr. Slane "kind of th[ought]" defense counsel "may have paid" or was going to pay the male doctor $1000 to review medical records, the bank records for Petitioner's client trust account do not reflect any payment made in this amount or any payment made to a male expert medical witness.  *Id.* at 27, 84-85; *see* Bank Records, Hr'g Ex. 39 (conventionally filed).  Mr. Slane could not explain why there was no check written to a male medical expert.  *See* Postconviction Hr'g Tr. of Dec. 4, 2014, at 86.

- After the trial had concluded, Petitioner and individuals who had provided funds for Petitioner's defense filed grievances with the Oklahoma Bar Association ("OBA") regarding Isaac Funderburk's defense strategy and possible misappropriation of funds.  Mr. Funderburk submitted at least two written responses to the OBA.  *See* Funderburk Ltr. of Apr. 29, 2006, Hr'g Ex. 45, at 2-6; Funderburk Ltr. of Aug. 3, 2006, Hr'g Ex. 45, at 18-20; *see also* Postconviction Hr'g Tr. of Mar. 3, 2015, at 63-65.  In one of these responses, Mr. Funderburk outlined the pretrial and trial efforts taken on Petitioner's behalf, including his "utiliz[ation] [of] the trust fund monies to employ[] the experts that I thought w[ere] best."  Funderburk Ltr. of Apr. 29, 2006, at 5.  Mr. Funderburk nowhere mentions contacting a second medical expert or any record review undertaken by such an expert.  *See id.* at 2-6.[15]  In the

---

[15] Before the magistrate judge, Respondent argued that Mr. Funderburk's use of "experts" on page three of this letter was an "oblique[]" reference to the second, male medical expert. Answer at 74.  Respondent does not reurge this position here, and the Court agrees with

other OBA response, Mr. Funderburk supplied "a breakdown of how the trust money was spent"; there is no payment to any medical expert identified. Funderburk Ltr. of Aug. 3, 2006, at 19-20.[16]

- Petitioner's defense attorney Eric Reynolds testified that he was not involved in any conversations about consulting with a second medical expert and that, after receiving Dr. May's unfavorable opinion, he was not aware of any discussion having occurred as to whether to obtain another medical opinion. *See* Postconviction Hr'g Tr. of Dec. 3, 2014, at 28; *accord* Hr'g Ex. No. 38, Reynolds Aff. of June 4, 2012, ¶ 6 ("I . . . am not aware of any other experts . . . that were involved in this case, except for Dr. May.") (Pet'r's Postconviction App. Ex. 66 (Postconviction R. at 1812-17)).

- During her consultations with defense counsel, Dr. Corrie May was "[n]ever made aware that anybody else in the defense team had consulted with anybody else about this case on the medical issues." Postconviction Hr'g Tr. of Jan. 22, 2015, at 24.

- When Petitioner met with her defense counsel the week prior to the commencement of trial, they discussed expert witnesses and the retention of Dr. May, but no attorney mentioned having had another medical expert review the files in the case. Postconviction Hr'g Tr. of Mar. 5, 2015, at 52-54.

- Donna Carmichael, Petitioner's mother, understood from a meeting with Mr. Funderburk approximately three weeks prior to trial that defense counsel had not hired any expert witnesses. Postconviction Hr'g Tr. of Dec. 1, 2014, at 165-66, 177-78.

While "the significance of" certain items of Petitioner's evidence "is open to judgment calls," "when [the] evidence" regarding the alleged second expert "is viewed cumulatively," it is "highly probable" that the defense attorneys did not consult with an unknown male doctor prior to trial. *Dretke*, 545 U.S. at 265; *Fontenot*, 4 F.4th at 1018. Having conducted the requisite de novo review, the Court agrees with the magistrate judge

---

Judge Purcell that such an interpretation is not supported when the relevant language is read in context with the remainder of the letter. *See* Suppl. R. & R. at 37.

[16] The lack of an entry for Dr. May in this breakdown is consistent with Dr. May's testimony—i.e., that she billed Mr. Funderburk for her services but never received payment. *See* Postconviction Hr'g Tr. of Jan. 22, 2015, at 30-31.

that Petitioner has rebutted the statutory presumption of correctness as to this aspect of the trial court's Factual Finding No. 4.[17]

### 4. Retention of Dr. Corrie May

The state trial court found that "the defense first retained Dr. May's services on September 1, 2005, and were aware of her opinion that the victim's injuries were consistent with child abuse by September 9, 2005."  Trial Ct. Order of Mar. 27, 2018, at 28 ("Factual Finding No. 5"); *see also id.* at 14.  Judge Purcell rejected Petitioner's challenge to the latter aspect of this finding, concluding that, while "[i]t is unlikely a member of the defense team reviewed Dr. May's opinion prior to the night of Sunday, September 11, 2005"—i.e., the night before trial commenced—Dr. May had faxed her report to Mr. Funderburk on Friday, September 9, 2005, and Petitioner had not presented clear and convincing evidence that defense counsel had not accessed the report between that September 9 transmission and the evening of September 11, 2005.  Suppl. R. & R. at 40-49.

---

[17] Pursuant to 28 U.S.C. § 2254(e)(1), Petitioner's burden is to rebut the presumption of correctness afforded the state court's factual determination.  Although arguably a distinction lies between simply rebutting the presumption of correctness attached to a factual determination and establishing that the factual determination is itself erroneous, the Supreme Court has conflated or equated the two showings, indicating that fulfilling the former has the effect of accomplishing the latter, *See Cockrell*, 537 U.S. at 348 (stating that § 2254(e)(1) requires a petitioner to "demonstrate that a state court's finding . . . was incorrect by clear and convincing evidence"); *accord id.* at 341 (noting that a reviewing court will "determine whether the trial court's determination . . . has been rebutted by clear and convincing evidence to the contrary"); *Dretke*, 545 U.S. at 266 ("The state court's conclusion . . . is shown up as wrong to a clear and convincing degree; the state court's conclusion was . . . erroneous.").  Accordingly, the undersigned views Petitioner's burden under AEDPA through this lens.

No objection is raised to Judge Purcell's disposition on this point, and the undersigned concurs that Factual Finding No. 5 should be presumed correct.

### 5.   The Timing of David Slane's Involvement in Petitioner's Defense

Finally, Respondent objects that Judge Purcell "total[ly] disregard[ed]" Factual Finding No. 5 and other portions of the state trial court's order when concluding that Mr. Slane "likely . . . did not become actively involved in Petitioner's defense until immediately before trial."   Resp't's Obj. at 28-30, 53-68; Suppl. R. & R. at 6 n.2.   As support, Respondent quotes at length from the trial court order, including multiple mixed conclusions of law and fact not entitled to a presumption of correctness and much that is not specifically connected to Mr. Slane or the timing of his representation.   *See, e.g.*, Resp't's Obj. at 30, 61.

Even assuming Judge Purcell's conclusion is improper, and giving all germane factual findings a presumption of correctness, the analysis in the Supplemental R. and R. of Petitioner's IATC claim is not materially affected.   That is, regardless of when Mr. Slane first became involved, Petitioner's defense team ultimately performed deficiently for the reasons stated below.

Respondent further complains that the magistrate judge used this belief as to the timing of Mr. Slane's involvement to improperly concentrate the Ground One analysis upon the performance of Mr. Funderburk, rather than upon the representation of the defense team collectively.   *See* Resp't's Obj. at 62, 81 n.22 (citing Suppl. R. & R. at 6 n.2).   It is true that the Supplemental R. and R. describes the acts and omissions of Mr. Funderburk in detail; however, this approach is largely a function of Mr. Funderburk's key role with

respect to the issues—pretrial consultation with Petitioner and with medical experts, trial strategy, and funding—upon which Ground One is based.  *See* Second Am. Pet. at 7-8; *see, e.g.*, Postconviction Hr'g Tr. of Dec. 4, 2014, at 47, 85-86 (Mr. Slane testifying that the second medical expert was someone Mr. Funderburk "had been in communication with"); *id.* at 86 ("Mr. Funderburk was handling the money in this case because it was his client."); Slane Aff. of Sept. 4, 2012, ¶ 4 (Mr. Slane stating that Mr. Funderburk "consulted with and retained" Dr. May); Trial Tr. of Sept. 12, 2005, at 6-11 (Doc. No. 102-1) (Mr. Slane stating to trial court that he would prefer not to address the requests in the State's motion in limine that sought to preclude evidence of A.S.'s frequent falls and unusual behavior, self-inflicted head trauma, and developmental delays, and requesting that the trial court wait to allow the absent Mr. Funderburk to "deal with the issue"); Trial Tr. of Sept. 13, 2005, at 14 (Mr. Slane stating to trial court: "Today we got here, Mr. Funderburk got here and gave . . . the two-page letter of what [Dr. May's] summary is.").  In any event, even assuming error by the magistrate judge in this respect, the undersigned has conducted the requisite review by examining the assistance provided by Petitioner's defense team as a whole.

### C.  Analysis of Ground One: Ineffective Assistance of Trial Counsel

In the Supplemental R. & R., Judge Purcell analyzed Petitioner's IATC claim under the familiar two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668.  *See* Suppl. R. & R. at 49-90.  This Court applies that same test in its de novo review of Petitioner's claim.

To satisfy the first prong of *Strickland*, Petitioner "must show that counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  That is, Petitioner must show

that her counsel's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was "not within the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted).

> The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.

*Hinton v. Alabama*, 571 U.S. 263, 273 (2014) (citation and internal quotation marks omitted). There is a "strong presumption" that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

> Our review of counsel's effectiveness is "highly deferential." [*Strickland*, 466 U.S. at 689.] In assessing [counsel's] performance, we consider all the circumstances, making every effort to eliminate the distorting effects of hindsight, and view his conduct from his perspective at the time. By the same token, we must eschew *post hoc* rationalizations for [counsel's] deliberations, investigations, and defense strategy, or lack thereof.

*Smith*, 379 F.3d at 929 (alteration, citation, and internal quotation marks omitted).

To satisfy the second prong of *Strickland*, Petitioner must show that counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. That is, Petitioner must show that "but for counsel's unprofessional errors," "there is a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

1.   Whether Petitioner's Counsel Rendered Deficient Performance

At Petitioner's criminal trial, the State presented three medical experts: Dr. Johnny Griggs, Dr. David Korber, and Dr. Chai Choi.  "Dr. Griggs opined that A.S. had died as a result of 'shaken baby syndrome,' and Dr. Korber reported findings that were consistent with this diagnosis.  Similarly, Dr. Choi concluded that the boy had died from head trauma with blunt force."  Proposed FFCL at 2-3 (footnotes omitted).  For the defense, Petitioner and a handful of character witnesses testified, but counsel presented no expert opinion testimony.  In Ground One, Petitioner alleges that the performance of her defense counsel was deficient in their "failure to fully investigate the cause of death and the timing of the injuries attribute[d] to Petitioner, including the failure to timely consult with and retain expert witnesses," and "failure to present testimony from the expert witnesses as to the cause and timing of the fatal injuries."  Second Am. Pet. at 7.

In the Supplemental R. & R., Judge Purcell considered this IATC claim in detail and ultimately concluded that defense counsel's performance did not meet prevailing professional norms and, therefore, was constitutionally deficient.  Respondent objects that the magistrate judge did not "faithfully apply" *Strickland* and instead viewed counsel's actions "through the distorting effects of hindsight."  Resp't's Obj. at 69-70.  According to Respondent, defense counsel's decisions with respect to medical experts were strategic choices that were reasonable under prevailing professional norms and under the circumstances of Petitioner's criminal case.  *See id.* at 69-103.

The undersigned has reviewed both the trial and postconviction proceedings, as well as the parties' arguments and cited authorities, in undertaking the required de novo review

of the Supplemental R. & R.  Having done so, the undersigned concurs with Judge Purcell's thorough and well-reasoned analysis.  While Respondent is correct that ineffectiveness is not established by an unsuccessful outcome, it is clear that, "considering all the circumstances," defense counsel's representation in this matter fell "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

The Supplemental R. & R. found in relevant part that "[n]othing in the record indicates counsel's failure to contact a medical expert witness until September 1, 2005, when trial was imminent, was a strategic decision."  Suppl. R. & R. at 72.

> [I]n a case where the timing of A.S.'s injuries were of critical importance, Mr. Funderburk did not contact a medical expert holding *any* opinion until less than two weeks before trial, endorsed her (likely as a result of this delay) as an expert witness prior to knowing her opinion, and did not realistically have enough time after receiving her opinion to follow up on her suggestions or consult other experts for a potentially more helpful opinion. . . . .
>
>      . . . .
>
>  . . . [C]ounsel did not contact Dr. May until September 1, 2005, [and] did not provide the necessary records for her review until the night of September [3], 2005, so that she began reviewing the records the following [Monday] morning – one week before trial started.  Due to the looming trial deadlines, defense counsel endorsed her as a witness without knowing Dr. May's ultimate opinions or suggestions.  By the time they received Dr. May's opinion on the eve of trial, there was no time to consult with another medical expert to see if they could possibly find an expert that might reach a different conclusion. . . . [T]his left Petitioner without a substantial defense and with no expert testimony to support an alternative cause of death or injury.
>
>  The Court agrees that defense counsel was not required to "doctor shop," as Respondent phrased it.  In other words, counsel was not required to perpetually continue searching for an expert witness until he found one to support an alternative cause of death.  However, there is a cavernous divide between "doctor shopping" and failing to contact a medical expert witness until less than two weeks before trial. . . . .
>
>      . . . .

 . . . Dr. May did suggest certain follow up tests and/or other types of medical experts who may be able to more directly illuminate the cause of death and/or the timing of the injury.  In Dr. May's report, she stated:

> (2) The documentation of the microscopic analysis of the brain by the pathologist for the presence or absence of axonal retraction bulbs, indicating diffuse axonal injury (DAI) fails to include the use of special histological stains and which areas of the brain were sampled.
>
>       . . . .
>
> (4) In my view the inclusion of specialized pathology consultants, specifically a neuropathologist and ophthalmic pathologist[,] would have afforded a more thorough examination of the brain and eyes.

[Dr. May Report, Hr'g Ex. 32, at 51.]  During the evidentiary hearing, Dr. May testified that the types of medical experts she referenced, including neuropathologists, presumably existed in Oklahoma City.  [Postconviction Hr'g Tr. of Jan. 22, 2015, at 53-54.]  However, counsel could not realistically make a choice about whether to follow up on her suggestions as trial was starting within two days, at most. . . . .

Thus, . . . the Court finds counsel's decisions to either not consult an additional expert and/or not follow up on Dr. May's suggestions were not strategic choices.  In a case that relied so heavily on medical evidence, "counsel's efforts to investigate and attempt to secure suitable expert assistance in preparing and presenting defendant's case fell below an objective standard of reasonableness."  [*People v. Ackley*, 870 N.W.2d 858, 865 (Mich. 2015).]  Counsel was not able to make a "strategic choice" due to his delay in consulting a medical expert for Petitioner's defense.  The choice was out of his hands at that point, unless he was willing to seek a continuance, and it is clear from the record he did not attempt to do so.

The Supreme Court has explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

[*Wiggins*, 539 U.S. at 521-22] (quoting *Strickland*, 466 U.S. at 690-91). Based on the record, the Court cannot conclude Mr. Funderburk engaged in a reasonable investigation that would make his decision not to consult with and/or potentially present other expert witnesses a strategic choice.

The deficient performance prong of *Strickland* . . . "is necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Hinton*, 571 U.S. at 273 (quotations omitted). Petitioner presented Robert Wyatt, a local criminal defense attorney recognized by various organizations for the quality of his legal representation, to offer his opinion regarding whether Mr. Funderburk's representation violated the Strickland standard of effective assistance of counsel. [Postconviction Hr'g Tr. of Mar. 19, 2015, at 89-96; Postconviction Hr'g Tr. of Mar. 20, 2015, at 2-42.]

He testified that specifically in a case that turns so starkly on medical evidence and, where funds were provided, it was unreasonable "to not engage an expert until about 10 days before trial, which is the day the witness list is due." [Postconviction Hr'g Tr. of Mar. 19, 2015, at 103.] . . . .

Mr. Wyatt also explained that unless you were using it solely for cross-examination purposes, it would not be possible that a report received as close to the beginning of trial as Dr. May's would adequately inform a defense strategy. *Id.* at 107. For example, in this case, Dr. May specifically suggested that defense counsel investigate particular issues that might show the subject injuries were older than alleged in this case. *Id.* Mr. Wyatt concluded that the delay in obtaining an expert witness in this case could not be considered strategic.

> Not a strategic reason, if they didn't have other expert testimony lined up.
>
> I can't see that there's strategy at all when it's 10 days before trial. That's where I have a problem with it.
>
>    . . . .
>
> . . . That's not a strategic approach. You have to have a game plan going into trial, not seat of your pants. And you don't get the materials the Friday before Monday's trial, or the night before, that's not strategic period.
>
> So any questions regarding strategy, I have to say that with respect to expert testimony in this case, I don't think it's strategic, period.

*Id.* at 115-16.

Mr. Wyatt also noted that even if the expert witness, such as Dr. May, states that they had ample time to review the record and provide an opinion, it is still not reasonable performance by counsel because they have no time to adjust their strategy. *Id.* at 139. Mr. Slane stated that they consulted with an additional expert witness and he had adequate time to adjust their strategy following receipt of Dr. May's report. However, the defense did not have time to follow up on Dr. May's suggestions regarding histological stains and the presence of iron in A.S.'s injuries. She indicated further examination and testing of these issues might prove A.S.'s fatal injuries were older than the State alleged. *Id.* at 139.

Suppl. R. & R. at 52-69 (footnote and alterations omitted) (certain alterations and omissions in original).

The undersigned agrees that Petitioner has overcome the presumption that her counsel's failure to engage an expert witness until eleven days before Petitioner's first-degree murder trial "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). Although Petitioner's defense attorneys were "not required to shop around for an expert until [they] found one that supported an alternative theory of causation, the fact that [they] did not consult a medical expert until trial was imminent, [the] witness list was due, and [they] had no time to follow up on any potential suggestions from the expert and/or alter [their] strategy is undeniably deficient." Suppl. R. & R. at 70-71.

Respondent first objects that criticism of defense counsel's timing as to contacting Dr. May as a potential witness is unfounded because Dr. May testified that she had "adequate time" and "materials" to form her opinion regarding Petitioner's records. Postconviction Hr'g Tr. of Jan. 22, 2015, at 41-42; *see* Resp't's Obj. at 81-84. As stated

by Petitioner, this objection "misses the point"—that is, that defense counsel did not procure and review that opinion, thereby learning that Dr. May's testimony would be unfavorable to Petitioner, until the trial already was upon them.  Pet'r's Resp. at 29.

Respondent relatedly argues that the defense team's failure to seek out another expert, or to otherwise pursue additional medical evidence regarding the timing and cause of A.S.'s death, was a matter of strategy and the product of a "reasonable investigation." Resp't's Obj. at 80, 88-102.[18]  This view is belied by the record, however, which reflects that the late action by the defense team in contacting Dr. May and reviewing her opinion left them no ability to turn to an alternative expert or pursue a different theory of defense. In other words, the record "underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment." *Wiggins*, 539 U.S. at 526; *cf.* Wyatt Aff. of June 5, 2012, ¶ 6 (Pet'r's Postconviction App. Ex. 85 (Postconviction R. at 2233-36)) (stating that, in his professional opinion, it would be unreasonable "from a strategy standpoint": to fail to "obtain the full medical record" and send it "as promptly as possible for a medical review"; based upon the outcome of that review, to fail to "either seek a second opinion" or "retain the expert" and "conduct any additional investigation and specialist review suggested by the expert"; "to wait until the day before a final witness list was due to contact or consult

---

[18] Respondent objects that the Supplemental R. & R. incorrectly characterizes Dr. May's opinion as contingent on further testing.  *See* Resp't's Obj. at 27.  To the contrary: the Supplemental R. & R. makes clear that Dr. May's final opinion was unfavorable to Petitioner but correctly notes that Dr. May *also* suggested additional testing or consultations.  *See* Suppl. R. & R. at 4, 42, 52, 64-65, 68.

with a medical expert for the first time"; and to "fail[] to seek a continuance" to follow up on the issues raised in Dr. May's report).[19]

Mr. Funderburk and Mr. Slane entered their appearances on Petitioner's behalf on February 10, 2005.  On March 4, 2005, the trial court set the criminal trial docket call for September 9, 2005, with trial to commence on September 12, 2005.  At no point thereafter did defense counsel seek a continuance.  *See State v. Moore*, No. CF-2004-351 (Okla. Cnty. Dist. Ct.).  It was not until Thursday, September 1, 2005, that defense counsel first contacted Dr. May regarding potential retention in Petitioner's case.  Trial Ct. Order of Mar. 27, 2018, at 28.  Defense counsel did not deliver relevant records to Dr. May for review until a meeting late in the evening on Saturday, September 3, 2005.  Postconviction Hr'g Tr. of Jan. 22, 2015, at 12-14.  But on September 2, 2005, Mr. Funderburk identified Dr. May as the only named testifying medical expert on the defense list filed with the trial court.  *See* Pet'r's Witness & Ex. List (Doc. No. 102-3, at 73-75).  Dr. May transmitted her written report to Mr. Funderburk's office via fax on Friday, September 9, 2005, and also sent a copy via FedEx, to be delivered by the afternoon of September 12, 2005.  Trial Ct. Order of Mar. 27, 2018, at 14, 28.  Mr. Funderburk and Dr. May met in person on the evening of Sunday, September 11, 2005, at which time she provided Mr. Funderburk another copy of her report.  Postconviction Hr'g Tr. of Jan. 22, 2015, at 21-24.

---

[19] The undersigned rejects Respondent's criticism of Mr. Wyatt's testimony as "wholly uni[n]formed."  Resp't's Obj. at 101-02.  Mr. Wyatt's testimony, which was subject to cross-examination by the State, reflected that he had prepared extensively in forming his opinion.  *See, e.g.*, Postconviction Hr'g Tr. of Mar. 19, 2015, at 94-95, 102-05.

When the criminal trial commenced on Monday, September 12, 2005, the trial court took up the State's motion in limine, which requested that Petitioner not be allowed to mention Dr. May in front of the jury until the State was provided with a report or summary of Dr. May's proposed testimony.   Mr. Funderburk was absent from the first day's proceedings.  *See* Trial Tr. of Sept. 12, 2005, at 9.  Mr. Slane's argument to the trial court indicates that defense counsel had not yet decided whether they would call Dr. May to the stand.  *See id.* at 6 (Mr. Slane stating he would "stay away" from mentioning Dr. May at voir dire).  Dr. May testified that at 2:08 p.m. on Monday, September 12, 2005, she spoke by telephone with Mr. Funderburk and was told that she "would not be expected to testify" at trial.  Postconviction Hr'g Tr. of Jan. 22, 2015, at 24.  The next day, Tuesday, September 13, 2005, Mr. Slane and Mr. Funderburk represented to the trial court that they "probably" would not call Dr. May to testify.  Trial Tr. of Sept. 13, 2015, at 14.  Defense counsel nevertheless turned over Dr. May's summary to the prosecution.  *See id.* ("[The State] ha[s] the report.").[20]

The State also moved to preclude the presentation of evidence by the defense regarding A.S.'s tantrums, frequent falls, unusual behavior, self-inflicted head trauma, and developmental delays.  *See* State's Mot. in Limine at 90-92; Trial Tr. of Sept. 12, 2005, at 6-12.  On Monday, September 12, 2005, Mr. Slane requested to defer to Mr. Funderburk upon that attorney's return as to the response to this aspect of the State's motion in limine.

---

[20] As noted by Petitioner, Dr. May's conclusion was thereafter revealed to the jury through one of the State's witnesses.  *See* Pet'r's Resp. at 20 n.11; Trial Tr. of Sept. 14, 2015, at 221-24 (Dr. Griggs testifying that Dr. May agreed with his findings).

*See* Trial Tr. of Sept. 12, 2005, at 7-11.  The trial court granted that request but expressed doubts that such evidence would be relevant.  *See id.* at 7-8, 9.  The next day, defense counsel made a confusing and rambling effort to establish admissibility.  *See* Trial Tr. of Sept. 13, 2005, at 14-25.  The trial court rejected this argument, finding that defense counsel had failed to provide the State adequate notice of their intention and had failed to show sufficient relevance or causal connection between such evidence and the charged crime. *See id.* at 25-27; Trial Tr. of Sept. 15, 2005, at 120-23.

Respondent's argument that defense counsel's performance in this regard was the result of strategic judgment is defeated by the timing and circumstances of the decisions made by those attorneys.  *See Wiggins*, 539 U.S. at 527 ("In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.").  According to Mr. Slane and Mr. Reynolds, the working theory for the defense team was to argue that A.S. had been fatally injured through accidental means.  *See* Reynolds Aff. of June 4, 2012, ¶ 4; Postconviction Hr'g Tr. of Dec. 4, 2014, at 47.  Both attorneys related that the receipt of Dr. May's opinion that the cause of A.S.'s death was consistent with abuse, as well as follow-up conversations with Dr. May after trial already had begun, caused them to instead attempt to point the blame for A.S.'s death at the child's father at trial.  *See* Reynolds Aff. of June 4, 2012, ¶ 9; Slane Aff. of Sept. 4, 2012, ¶ 6; Postconviction Hr'g Tr. of Dec. 4, 2014, at 49.  In other words, Petitioner's criminal defense was conceived when they learned of Dr. May's opinion one

to three days prior to trial and, possibly, when the trial court granted the State's motion in limine during trial.

For at least seven months preceding that point, defense counsel "had every reason to develop the most powerful . . . case possible" as to medical causation and timing issues. *Wiggins*, 539 U.S. at 526. As detailed elsewhere, their failure to do so was not the result of a lack of a plausible defense to pursue or money to fund the pursuit. *See* Order of May 14, 2020, at 2-3; Suppl. R. & R. at 74-80, 83-86 (summarizing new medical evidence presented by Petitioner to support proposition that A.S. could not have died from actions taken by Petitioner on the date alleged by the State); Slane Aff. of Sept. 4, 2012, ¶ 4 (identifying health and development records that were in counsel's possession); Trial Ct. Order of Mar. 27, 2018, at 12 (same); Proposed FFCL at 12-14 (citing records of A.S.'s preexisting health issues and earlier falls and finding that "[e]ven if the fact-finder were to view the evidence of prior falls with a skeptical eye, it could not possibly regard A.S. as a boy in 'perfectly fine' condition until January 13, 2004"); Suppl. R. & R. at 24-29 (summarizing the funds provided to Mr. Funderburk for use on experts and investigators).[21] This was "inattention, not reasoned strategic judgment."[22] *Wiggins*, 539 U.S. at 526; *see*

---

[21] Dr. May testified that she did not recall being specifically asked by defense counsel regarding the timing of A.S.'s injuries. *See* Postconviction Hr'g Tr. of Jan. 22, 2015, at 51-52; *see also* Reynolds Aff. of June 4, 2012, ¶¶ 7-8.

[22] As instructed by the Tenth Circuit:

[E]ven where an attorney pursued a particular course of action for strategic reasons, courts still consider whether that course of action was objectively reasonable, notwithstanding *Strickland*'s strong presumption in favor of upholding strategic decisions.

*also id.* at 527 ("*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision . . . .  Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy.").[23]

Finally, Respondent, while not conceding deficient performance, attempts to justify Petitioner's counsel's delay and inaction by arguing that A.S.'s daycare provider, Janus Roth, misled the defense team as to her credentials and as to the extent that she would be able to assist with trial preparation.  *See* Resp't's Obj. at 84-88.  Ms. Roth was not an attorney of record for Petitioner and was not otherwise retained to assist in this matter, however.  Under "all the circumstances," it would not have been "strategically reasonable" for defense counsel to rely upon Ms. Roth as a basis for failing to conduct their own investigation and to timely procure witnesses and evidence.  *Strickland*, 466 U.S. at 691; *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 594 (3d Cir. 2015) (finding that defense counsel's performance was deficient where, *inter alia*, the attorney failed to obtain a psychiatric evaluation or to retain a defense expert, despite "his belief that [the

---

*Bullock v. Carver*, 297 F.3d 1036, 1048 (10th Cir. 2002).  "[T]he mere incantation of 'strategy' does not insulate attorney behavior from review."  *Brecheen v. Reynolds*, 41 F.3d 1343, 1369 (10th Cir. 1994) (internal quotation marks omitted).

[23] Further, Respondent's suggestion that simply cross-examining the State's experts was a reasoned and reasonable strategy is seriously undermined by defense counsel's affirmative belief that "without a supporting expert or a better explanation as to how the child was injured," Petitioner "had no chance of an acquittal."  Reynolds Aff. of June 4, 2012, ¶ 4; *see also id.* ¶ 8 (Mr. Reynolds stating that he does not recall defense counsel preparing any cross-examination based upon Dr. May's report); *Hinton*, 571 U.S. at 273 ("Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." (internal quotation marks omitted)).

defendant's] mental health was important to his case," based only upon a neutral court-appointed expert's competency determination).

As trial commenced, the defense team did not know if they would have a tenable expert and was clearly not making "strategic choices . . . after thorough investigation of law and facts." *Strickland*, 466 U.S. at 690.  Their "complete lack of pretrial preparation put[] at risk both [Petitioner's] right to an ample opportunity to meet the case of the prosecution and the reliability of the adversarial testimony process." *Kimmelman*, 477 U.S. at 385 (internal quotation marks omitted).  The Court agrees with the Supplemental R. and R. that the performance of Petitioner's defense counsel was deficient for the reasons outlined above.

2.  <u>Whether Petitioner's Counsel's Deficient Performance Was Prejudicial</u>

The Court previously found that Petitioner "ha[s] made a . . . showing of the probability of actual innocence sufficient to permit her case to overcome the limitations bar."  Order of Oct. 28, 2011, at 2-4; *accord* Order of May 14, 2020, at 2-3, 3 n.2; *see* Suppl. R. & R. at 74-80, 83-86.  The Supplemental R. & R. relied on this previous finding in concluding that Petitioner had shown prejudice under *Strickland*.  *See* Suppl. R. & R. at 72-90.

By making this finding, the Court held that Petitioner had shown that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" and "that it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence."  *Schlup*, 513 U.S. at 327 (internal quotation marks omitted); *see id.* at 316 ("[I]f a petitioner . . . presents evidence of innocence so strong that

a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."). The Supreme Court has explained that making this showing of actual innocence requires "a stronger showing than that needed to establish prejudice." *Id.* at 327 (citing *Strickland*, 466 U.S. at 694); *accord Demarest v. Price*, 130 F.3d 922, 942 (10th Cir. 1997).

Put differently, Petitioner already has "show[n] more than just a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt." *House v. Bell*, 547 U.S. 518, 571 (2006) (Roberts, C.J., concurring in the judgment in part and dissenting in part) (omission and internal quotation marks omitted). "As this Court has already found that [Petitioner] meets the more stringent *Schlup* test, it necessarily follows that [she] also satisfies the prejudice test under *Strickland*." *Larsen v. Adams*, 718 F. Supp. 2d 1201, 1224 (C.D. Cal. 2010) (citing *Fisher v. Gibson*, 282 F.3d 1283, 1310 (10th Cir. 2002) (declining to "limit ineffective assistance to only those claims where defendant can demonstrate his innocence")). "Accordingly, for substantially the same reasons, [the Court] now hold[s] that [Petitioner] has established that, absent [her] counsel's unprofessional errors and omissions, a factfinder would have had a reasonable doubt respecting [her] guilt." *Rivas v. Fischer*, 780 F.3d 529, 551 (2d Cir. 2015).[24] "To the extent it is possible for a petitioner to make the *Schlup* actual innocence showing but nonetheless

---

[24] These reasons have been discussed by the Court at length. *See* Suppl. R. & R. at 72-80; Proposed FFCL at 2-9, 10-28; R. & R. of Dec. 12, 2019, at 9-10, 19-21.

fail to demonstrate prejudice under *Strickland*, such a possibility does not exist on the present facts," where the assistance of counsel that is the basis for habeas relief in Ground One of the Second Amended Petition is intertwined with and inseparable from the presentation of experts and evidence that established Petitioner's claim of actual innocence. *Larsen*, 718 F. Supp. 2d at 1225.

Respondent concedes the relative status of the standards but argues that the magistrate judge nonetheless erred in finding Petitioner had satisfied *Strickland*'s prejudice prong.  Respondent claims that Judge Purcell, in rejecting Respondent's arguments as to the lack of credibility of Petitioner's habeas experts, improperly placed the burden upon Respondent to disprove prejudice under *Strickland* rather than requiring Petitioner to prove such prejudice.  *See* Resp't's Obj. at 114-19.  Relatedly, Respondent argues that the Supplemental R. & R. overlooked or ignored credibility and corroboration issues with Petitioner and her witnesses and that these issues defeat the conclusion "that Petitioner has shown a reasonable probability of a different outcome at trial."  *Id.* at 106-14.

The evidence Respondent cites in support of these objections already was before the Court in connection with either its October 2011 determination of actual innocence, or its May 2020 determination of actual innocence, or both.  Respondent did not seek relief from those Orders and does not here present an adequate basis for the actual-innocence determination to be revisited.  *Cf.* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *id.* R. 60(b) (prescribing that "[o]n motion and just terms" a court may relieve a party from an order).  Accordingly, the Court overrules these objections and concludes that Petitioner has met her burden to establish prejudice on Ground One under

*Strickland. See Schlup*, 513 U.S. at 327; *Rivas*, 780 F.3d at 550-51; *Larsen*, 718 F. Supp. 2d at 1224-25.

### 3.   Harmless-Error Review

To be entitled to federal habeas corpus relief, a petitioner generally must show that the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted); *accord Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011). The Tenth Circuit has explained, however, that applying this harmless-error test "is a needless formality in the context of a *Strickland* claim, which itself demands a showing that the alleged deficiency was prejudicial." *Byrd*, 645 F.3d at 1167 n.9 (citing cases); *see also Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) ("The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review.").

## CONCLUSION

The Court recognizes that Petitioner was not entitled to "perfect representation" from her defense counsel. *Harrington v. Richter*, 562 U.S. 86, 110 (2011). But "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685. Having reviewed the relevant record and authorities, the Court concludes that Petitioner's counsel did not fulfill that role and that Petitioner was therefore deprived of her Sixth Amendment right to the effective assistance of trial counsel. Consistent with this conclusion, the Court determines that "law and justice require" that Petitioner be afforded a new trial. 28 U.S.C.

§ 2243; *see United States v. Bergman*, 746 F.3d 1128, 1134 (10th Cir. 2014) ("[T]he presumptively appropriate remedy for an effective assistance violation is a new trial[.]").

For the foregoing reasons, the Supplemental Report and Recommendation (Doc. No. 261) is ADOPTED as modified.  The Second Amended Petition for Writ of Habeas Corpus (Doc. No. 226) is CONDITIONALLY GRANTED as to Ground One as follows:

The State of Oklahoma may commence proceedings for a new trial on the underlying charge within 90 days of the entry of this Order.  Failure to commence such proceedings within 90 days shall result in this Court ordering Petitioner Beverly Michelle Moore's permanent discharge and release from all restraints and custody of the State of Oklahoma on the conviction at issue.[25]

IT IS FURTHER ORDERED that Petitioner's Request for Status Conference (Doc. No. 268) is DENIED AS MOOT.

IT IS SO ORDERED this 11th day of September, 2023.

CHARLES B. GOODWIN
United States District Judge

---

[25] Petitioner's remaining habeas claims (Grounds Two through Five) are moot in light of this entitlement to relief and are hereby dismissed without prejudice.